**In re the Marriage (now dissolved) of Kathleen L. HARKEMA, n/k/a Kathleen L. Schol, Petitioner, Respondent,**

v.

**Cary L. HARKEMA, Appellant.**

**No. C1–91–553.**

Court of Appeals of Minnesota.

Aug. 20, 1991.

Benjamin Vander Kooi, Jr., Vander Kooi Law Offices, P.A., Luverne, for petitioner, respondent.

Joel C. Wiltrout, Lucht, Wiltrout & Ahlquist, Worthington, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY, and NORTON, JJ.

## OPINION

FOLEY, Judge.

Cary L. Harkema appeals the trial court's order denying his motion for custody modification and an evidentiary hearing where the trial court had previously issued an order granting the evidentiary hearing. We reverse and remand with instructions.

## FACTS

Cary and respondent Kathleen L. Harkema, n/k/a Kathleen L. Schol, were married for approximately 16 years before their marriage was dissolved by judgment and decree on August 22, 1984. The parties were awarded joint custody of their four children, with physical custody granted to Kathleen.

Since that time, the oldest child has reached the age of majority, and physical custody of the second oldest child was transferred to Cary. Physical custody of the two youngest children, M.G.C.H. and C.D.H., ages 12 and 10 respectively, remains with Kathleen at this time.

Both parties have remarried. Cary remarried in 1990 and currently resides with his wife, her three children from a previous

marriage, and his oldest son. Kathleen is presently married to Al Schol, with whom she and the two youngest children continue to reside.

In August 1990, Cary moved the trial court to amend its August 1984 judgment and decree to make Cary the primary custodial parent for M.G.C.H. and C.D.H. Cary submitted his affidavit and the affidavit of licensed psychologist Marlo A. Skurdal as support for modification.

In his affidavit, Skurdal stated M.G.C.H. told him "when Al gets mad I get scared he is going to hit me or something." C.D.H. told Skurdal he was afraid of Al and that

he yells and like hits the walls, takes it out on everybody else * * *, [and] when he drives the car, he drives like a maniac, he scares us."

Skurdal also stated that, since interviewing these children at the time of the original dissolution, he "believes there is a substantial change in them due to the change in circumstances" of their mother's marriage to Schol. He concludes that

the present environment endangers their emotional development. * * * [H]e sees no harm by a change of physical custody and sees it as a benefit to both of the children.

In Cary's affidavit, he stated the two boys informed him they "wanted to remain living with [Cary] and are adamant about their refusal to return to living with [Kathleen]." He continued:

[Schol] is emotionally abusive, by yelling at them, telling them that they are stupid and dumb, and calling [Cary] and his new wife names * * *, [and] when [Schol] gets mad they are afraid of him and are afraid that he will hit them, even though he has never done so.

The trial court ruled on Cary's motion on August 29, 1990. In its findings of fact and order, the trial court ordered *an evidentiary hearing*, home studies and the appointment of a guardian ad litem.

The guardian ad litem subsequently met with the two boys on two occasions. Both boys reasserted their desire to live with their father, citing as support for their choice, Schol's verbal abuse, threats, and fits of anger where he starts throwing objects. Both boys also stated they get along very well with their stepmother, while they have some difficulty in getting along with their own mother. The guardian ad litem recommended Cary be awarded physical custody. The guardian ad litem stated that, although he did not believe any emotional problems were apparent at the time, if communication did not improve in Kathleen's home, problems could develop in the future.

A licensed social worker for the Pipestone County Family Services Center conducted a visit of Cary's home. She stated that if the situation in Kathleen's home did not improve, "it is likely the two boys, as they become older, will choose to live with their father." She recommended Cary be awarded physical custody of the two boys.

A counselor from Hennepin County Family Services conducted the visit of Kathleen's home. She found no evidence of Schol threatening the boys or being verbally abusive toward them, even though she did find Schol provided discipline in an inappropriate manner at times by raising his voice and losing his temper. She commented both boys expressed strong opinions of wanting to live with their father. She attributed this, however, to the activities available to them in the country, their developmental stage and typical identification with the more masculine parent. Both boys stated they could live with their mother if it was required.

The Hennepin County counselor found it difficult to assess whether or not the boys were in emotional danger in their mother's home environment. She commented it was impossible to fully assess the situation without interviewing all family members. She stated:

It appears that none of the evaluators, psychologists, or the guardian ad litem involved with this family had the opportunity to interview and observe all the critical family members, and therefore are not in a position to offer recommendations.

Upon receipt of the above reports, the trial court specifically found insufficient evidence to justify an evidentiary hearing for change of custody. Although it found a significant change in circumstances occurred in that Kathleen had remarried, there was insufficient evidence of endangerment. Therefore, the trial court concluded that, pursuant to the three-pronged test set out in the statute, a change of custody was not in order.

## ISSUE

Did the trial court err by denying an evidentiary hearing on the motion for modification of child custody?

## ANALYSIS

■ In custody determinations, appellate review is limited to the question of whether the trial court abused its discretion by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

A trial court has broad discretion in matters of child custody and will not be reversed absent a clear showing of an abuse of that discretion.

*Roehrdanz v. Roehrdanz*, 438 N.W.2d 687, 690 (Minn.App.1989), *pet. for rev. denied* (Minn. June 21, 1989).

When the parents do not agree to custody modification, the trial court must use a three-part analysis pursuant to Minn.Stat. § 518.18(d). *Coady v. ViRay*, 407 N.W.2d 710, 712 (Minn.App.1987). Minn.Stat. § 518.18(d) provides that

the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

\* \* \* \* \* \*

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

■ Where sufficient evidence exists warranting consideration of a modification order, then the trial court shall order an evidentiary hearing. *Taflin v. Taflin*, 366 N.W.2d 315, 320 (Minn.App.1985). However, this hearing should not be held unless the movant makes a prima facie showing that the section 518.18(d) standards could be satisfied. *Westphal v. Westphal*, 457 N.W.2d 226, 229 (Minn.App.1990). This showing is made when the accompanying affidavits set forth sufficient facts which, if true, justify modification. *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 472 (Minn.1981). At a minimum, these affidavits must

establish satisfactorily on a preliminary basis that there has occurred a significant change of circumstances \* \* \* [which] endanger the child's physical or emotional health or the child's development.

*Id.* (citations omitted).

Cary contends he met his burden of establishing, at least on a preliminary basis, that a significant change in circumstances has occurred that endangers the boys' physical or emotional health or emotional development. The trial court agreed and ordered an evidentiary hearing. However, in its March 1, 1991 order, the court sua sponte denied Cary's request for the evidentiary hearing, even though it found a change in circumstances because of Kathleen's marriage to Schol and the home study reports concluded a change of custody to the father would best serve the boys' interests.

■ Where the trial court has issued an order for an evidentiary hearing, it cannot then sua sponte deny the evidentiary hearing without first giving the parties a chance to argue the case. In addition, Cary has met his burden of supplying sufficient facts which, if true, justify modification. Cary's and Skurdal's affidavits alleged both boys made statements that their

stepfather did things that scared them. This included yelling, throwing things, hitting walls, and driving the car like a maniac.

Fear of the custodial parents has been found to be a recognized sign of present endangerment. *Lilleboe v. Lilleboe,* 453 N.W.2d 721, 724 (Minn.App.1990). The trial courts have been cautioned to pay special attention to cases alleging present endangerment and are strongly encouraged to conduct evidentiary hearings in such cases in order to protect the best interests of the children. *Id.*

It was alleged that Schol was emotionally abusive to the boys by yelling at them, telling them they were stupid and dumb, and calling Cary and his wife names. "Allegations of abuse, physical or emotional, have been held to endanger a child's well-being." *Id.* In *Lilleboe,* this court held that an evidentiary hearing was required to protect the best interests of the child where allegations of abuse, fear of the custodial parents, changes in the children's attitude and behavior, and the consistent denial of visitation proved to be sufficient facts which, *if true,* may endanger the children's physical or emotional health or development. *Id.*

In *Taflin,* this court held that the best interests of the two minor children would best be served by conducting a full evidentiary hearing where affidavits alleged claims of voluntary relinquishment of the children and minimal contact with the children for over two years, borrowing of excessive amounts of money from the children without repayment, and abuse of child support payments. *Id.* at 320–21.

The trial court cites *Niemi v. Schachtschneider,* 435 N.W.2d 117 (Minn.App. 1989), where an evidentiary hearing was held with respect to one child. In *Niemi,* it was alleged the child was not adjusting well, was depressed, withdrawn, impulsive, expressed a strong desire to live with his father, and indicated he might run away from home if custody was not transferred. *Id.* at 118–19. However, *after an evidentiary hearing,* the court found insufficient evidence to justify modification of custody.

*Id.* at 119. No hearing was held as to the younger child's endangerment because the affidavits presented did not indicate the *possibility* of her endangerment. *Id.* at 118.

### DECISION

Because evidentiary hearings are strongly encouraged, an evidentiary hearing should be held where the trial court already found a change in circumstances and modification is in the boys' best interest. Where some dispute exists as to whether the present environment endangers the boys' emotional development, an evidentiary hearing would be helpful and is justified. Whether the underlying facts developed at such a hearing then justify modification is a question left to the discretion of the trial court. Therefore, we reverse and remand for an evidentiary hearing.

Reversed and remanded.