**In re the Marriage of Sandra J. ROSS, Petitioner, Respondent,**

v.

**James O. ROSS, Appellant.**

**No. C5–91–846.**

Court of Appeals of Minnesota.

Nov. 26, 1991.

Renee L. Worke, Rietz, Rietz & Rietz, Owatonna, for petitioner, respondent.

John H. McLoone, IV, McLoone Law Offices, Waseca, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

James Ross disputes the trial court's refusal to conduct an evidentiary hearing on his motion to modify custody of the parties' teenaged son, D.J.R. We reverse and remand.

## FACTS

In a July 1990 dissolution decree, physical custody of D.J.R. and his younger sister was placed with their mother, respondent Sandra J. Ross. D.J.R. was born on August 14, 1974, and is now age 17.

In February 1991, the children's father, James O. Ross, moved to modify custody of D.J.R. only. Ross presented affidavits establishing that the child wanted to live with his father, had expressed such a preference since the end of December 1990; and had physically moved in with his father. The affidavits reported observations of a psychologist that D.J.R. indicated he was very distressed by his mother's continuous anger and that this had affected his behavior in school. In addition, the affidavits showed that the child's discipline and behavior problems in school had escalated since the dissolution, and that in the two weeks D.J.R. had been living with his father his school performance improved significantly.

The trial court denied the modification motion without an evidentiary hearing. The court indicated James Ross had not shown a change of circumstances during the period D.J.R. had lived with his mother which presented a "serious threat" to his health or emotional well being. This appeal followed.

## ISSUE

Was appellant entitled to an evidentiary hearing on his motion for modification of child custody?

## ANALYSIS

1. Generally, no motion to modify a custody order may be made earlier than one year after the entry of the decree. Minn. Stat. § 518.18(a) (1990). This time limit does not prohibit a modification motion if the court

> has reason to believe that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.

Minn.Stat. § 518.18(c) (1990).[1]

In addition, the statute provides that a prior custody order shall not be modified unless the court finds a change has occurred in the circumstances of the child or the custodian and modification is necessary to serve the best interests of the child. Minn.Stat. § 518.18(d) (1990). The court shall retain the custodian established by the prior order unless

> the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii).[2]

A party seeking modification of a custody order must submit an affidavit setting forth facts supporting the requested modification. Minn.Stat. § 518.185 (1990). The trial court may deny a motion for modification of a custody order without a hearing if facts in the accompanying affidavits, assuming they are true, do not show sufficient justification for the modification.

*Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981).

Thus, appellant's burden in this case was to demonstrate a prima facie case of endangerment connected with the child's present custodial placement. The record need only show the court had "reason to believe" the child's environment "may" endanger the child for a modification motion to be entertained within one year of the decree. *See* Minn.Stat. § 518.18(c). To avoid summary denial of the motion under the *Nice–Petersen* doctrine, however, appellant also had to establish on a preliminary basis that a significant change of circumstances had occurred that endangered D.J.R.'s physical or emotional health or development.[3] *See Nice–Petersen,* 310 N.W.2d at 472.

2. We review the trial court's exercise of its equitable jurisdiction in determining ultimate issues under an abuse of discretion standard. *Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990). However, where the trial court weighs statutory criteria in light of assumed or determined facts, we are to correct erroneous applications of the law. *Id.*

The trial court makes no findings of fact on preliminary statements in affidavits accompanying a modification motion. *Nice–Petersen,* 310 N.W.2d at 472. Thus, there is no occasion here for deference to trial court assessment of conflicting evidence. The court's denial of a modification motion without an evidentiary hearing is analogous to the decision to grant a directed verdict. *See Crawford v. Northeastern Okla. State Univ.,* 713 F.2d 586, 587–88 (10th Cir.1983) (decision on prima facie case, without findings, analogous to directed verdict). On appeal from a directed verdict, the reviewing court determines as

---

1. The time limitation does not apply if the parties agree to waive it or if the court finds there is persistent and willful denial or interference with visitation. Minn.Stat. § 518.18(a), (c). Neither of these factors is at issue here.

2. As an alternative to showing endangerment, the motion could be based on the agreement of the custodian to the modification or the integration of the child into the movant's family

with the custodian's consent. Minn.Stat. § 518.-18(d)(i), (ii). Neither of these circumstances is claimed here.

3. Normally, of course, the identification of a prima facie showing of endangerment suffices to establish as a matter of law the court's reason to believe that there "may" be endangerment.

a matter of law whether reported evidence is sufficient to present a fact question to the jury. *Citizens Nat'l Bank of Willmar v. Taylor,* 368 N.W.2d 913, 917 (Minn.1985). Finally, de novo review occurs here because the evidence presented to the trial court is available to us in the same form. *See Swanlund v. Shimano Indust. Corp.,* 459 N.W.2d 151, 155 (Minn.App.1990) (de novo review of trial court's refusal to amend complaint to add a claim for punitive damages), *pet. for rev. denied* (Minn. Oct. 5, 1990).

■ 3. The concept of "endangerment" is unusually imprecise. In fact, endangerment is not a quantitative but a qualitative standard. Any threat of harm to a child might arguably constitute endangerment. On the other hand, we agree with the trial court that according to the usage of this concept in the context of child custody, the legislature likely intended to demand a showing of a significant degree of danger. Thus, the trial court decided the matter in terms of whether the alleged endangerment was "serious."

In two recent decisions, we have reviewed orders denying an evidentiary hearing where endangerment to the child was alleged. In both instances, we remanded for an evidentiary hearing, stressing that hearings are strongly encouraged where allegations are made of present endangerment to a child's health or emotional well being. *See Harkema v. Harkema,* 474 N.W.2d 10, 14 (Minn.App.1991) (allegations of emotional abuse of children by custodial parent's spouse warranted hearing); *Lilleboe v. Lilleboe,* 453 N.W.2d 721, 724 (Minn. App.1990) (hearing required to investigate allegations of abuse, fear of the custodial parent and changes in the children's attitude and behavior); *cf. Roehrdanz v. Roehrdanz,* 438 N.W.2d 687, 691 (Minn. App.1989) (denial of evidentiary hearing upheld where affidavits did not allege evidence of abuse or problems in school or with peers that might be attributable to the living situation), *pet. for rev. denied* (Minn. June 21, 1989).

■ As in *Harkema* and *Lilleboe,* we reach the conclusion here that a prima facie

case has been established. This determination is premised on D.J.R.'s strong preference to live with his father, his physical relocation to his father's home, and the additional evidence that D.J.R. has suffered emotional distress which has resulted in school performance problems that would be alleviated by a change of custody.

■ 4. A critical factor in reaching our conclusion is the age of the child. The choice of an older teenage child is an overwhelming consideration in determining the child's custody or in deciding whether he is endangered by preserving the custodial placement he opposes.

The predominant importance of the choice of the older child is a well settled part of Minnesota law, even as a consideration in placing a child with a nonparent. *See State ex rel. Feeley v. Williams,* 176 Minn. 193, 197, 222 N.W. 927, 928 (1929) (preference of 12½–year–old child given great weight in maintaining her custody with aunt and uncle); *Gauthier v. Walter,* 110 Minn. 103, 106, 124 N.W. 634, 635 (1910) (friction that would result by compelling 15–year–old to live with father warrants retaining him in foster parents' home). Other courts have expressed like concerns. *See David M. v. Margaret M.,* 385 S.E.2d 912, 920 (W.Va.1989) (preference of child 14 years old or older is determinative); *Marcus v. Marcus,* 109 Ill. App.2d 423, 432–33, 248 N.E.2d 800, 805 (1969) (error to award custody of 14 year old to mother against his stated preference to remain with grandmother); *Patrick v. Patrick,* 212 So.2d 145, 147 (La.Ct.App.) (award of custody of 17 and 18–year–old children to father reversed where children expressed preference to remain with mother), *writ refused,* 252 La. 700, 212 So.2d 851, *writ refused,* 252 La. 878, 214 So.2d 548 (1968).

In *David M.,* the West Virginia court explained its decision primarily in recognition of the statutory right of a child of 14 to choose his or her own guardian. *David M.,* 385 S.E.2d at 920. Such a basis for deference to the choice of an older teenager. also is found in Minnesota law. *See* Minn.Stat. § 525.6175 (1990) (court shall appoint guardian nominated by minor, if minor is 14 years of age or older, unless

court finds appointment contrary to minor's best interests).

In this case, Sandra Ross's affidavit opposing the motion raises a question as to whether D.J.R.'s choice is shaped by his wish to deal with a more "lenient" parent and is a response to confrontations with his mother regarding his behavior. Similar arguments might exist if the evidence showed the child's choice was premised on unfounded beliefs or was the consequence of undue influence by the noncustodial parent.

Evidence of this type might demonstrate in some cases that a child's choice is as foolish as it is firmly held. Often, however, the possibility of objectionable influences on the older teenaged child does very little to diminish the weight of the child's preference. *See Williams,* 176 Minn. at 196, 222 N.W. at 928 (imposition of custody against older child's wishes likely damages child's best interests); *In re Campbell's Guardianship,* 216 Minn. 113, 121, 11 N.W.2d 786, 790 (1943) (imaginary wrongs same effect as real); *id.,* 216 Minn. at 121–22, 11 N.W.2d at 790–91 (Gallagher, J., concurring) (even though 17–year–old judgment dubious, "no good would result" from a court order rejecting it). There is serious question when dealing with a child of this age whether trial courts can practically contradict the child's choice even if it was shown to be misguided. *See Patrick,* 212 So.2d at 147 (from practical viewpoint, it would be "vain and useless act" to order children who are approaching age of majority to live with parent with whom they do not wish to live).

## DECISION

The trial court erred as a matter of law in concluding that appellant did not present a prima facie showing of a significant change of circumstances endangering D.J.R.'s emotional health or development. Therefore, we reverse and remand for an evidentiary hearing.

Reversed and remanded.