In re the Marriage of Leyla TARLAN, petitioner, Appellant,

v.

Alan SORENSEN, Respondent.

No. A04–2257.

Court of Appeals of Minnesota.

Sept. 6, 2005.

Kay Nord Hunt, Marc A. Johannsen, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for appellant.

Alan Sorensen, Grand Forks, ND, pro se respondent.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's denial of her motion to compel respondent to reestablish their children's residence in Minnesota and to enroll the parties' daughter in counseling. Appellant argues that the district court erred by (1) failing to enforce its amended judgment relating to the children's residency and (2) failing to conduct an evidentiary hearing relating to appellant's request that the parties' daughter attend counseling sessions and that respondent refrain from monitoring their daughter's weight. Because the district court did not misconstrue its judgment relating to the children's residency, we affirm the denial of appellant's motion to compel respondent to reestablish the children's residency in Minnesota. But because appellant alleged facts that, if true, rise to a level of emotional endangerment and could impair the emotional development of the parties' daughter, the district court erred by failing to hold a hearing under Minn.Stat. § 518.176, subd. 1 (2004). We therefore affirm in part, reverse in part, and remand for an evidentiary hearing.

## FACTS

This is the most recent appeal in acrimonious and contentious dissolution-related proceedings. Appellant Leyla Tarlan and respondent Alan Sorensen dissolved their marriage in February 1999. In a subsequent order dated April 11, 2000, the district court awarded sole physical and sole legal custody of the parties' three children to respondent, subject to appellant's parenting time. In the spring of 2001, respondent was accepted to three law schools in Minnesota, as well as to the University of North Dakota School of Law (UND). He decided to attend UND because he "thought that it would provide the best situation for the children." In July 2001, respondent moved the district court to amend the judgment in order to change the residence of the children to Grand Forks, North Dakota. By order dated September 10, 2002, the district court granted the motion and permitted respon-

dent "to reside with the children in Grand Forks, North Dakota until [r]espondent completes his education at [UND]."

In the spring of 2004, respondent graduated from UND and accepted an offer of employment in Grand Forks, where he and the children continue to reside. In June 2004, the Grand Forks County Social Service Center (social services) recommended, but did not require, that the parties' daughter undergo counseling because of "[p]sychological [m]altreatment by [respondent]." Social services recommended counseling because of respondent's weekly monitoring of his daughter's weight and use of derogatory language around the children.

Appellant moved the district court for an order requiring, among other things, that respondent (1) reestablish the children's residency in Minnesota and (2) immediately enroll the parties' daughter in counseling and refrain from weighing their daughter in order to monitor her weight. In an affidavit to the district court, appellant alleged that respondent was "being cruel" by refusing to enroll the parties' daughter in counseling and by "refusing to stop weighing [their daughter] against her will even when she was visibly traumatized" by respondent's actions. The district court heard arguments by counsel and subsequently denied appellant's motion without explanation in its order and without a memorandum. This appeal follows.

## ISSUES

1. Did the district court err by denying appellant's motion to reestablish the children's residency in Minnesota?

2. Did the district court err by denying an evidentiary hearing when a prima facie case of endangerment had been established?

## ANALYSIS

### I.

■ The district court's amended judgment allowed respondent "to reside with the children in Grand Forks, North Dakota until [r]espondent completes his education at [UND]." Citing *Dent v. Casaga,* 296 Minn. 292, 296, 208 N.W.2d 734, 737 (1973), for the proposition that an amended judgment must be enforced by the district court unless a modification is ordered, appellant argues that the district court should have required respondent to return the children's residence to Minnesota after he completed law school. Because the amended judgment lacks an explicit requirement that respondent return the children's residence to Minnesota after he finished law school, appellant's argument assumes that the amended judgment contains an implicit return-of-residence requirement. By denying appellant's motion, the district court rejected this assumption.

■ Whether a dissolution judgment is ambiguous is a legal question. *Halverson v. Halverson,* 381 N.W.2d 69, 71 (Minn.App.1986). If a judgment is ambiguous, a district court may construe or clarify it. *Stieler v. Stieler,* 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). The meaning of an ambiguous judgment provision is a fact question, which we review for clear error. *Landwehr v. Landwehr,* 380 N.W.2d 136, 139–40 (Minn.App.1985). Notably, a district court's construction of its own ruling is given great weight on appeal. *Johnson v. Johnson,* 627 N.W.2d 359, 363 (Minn.App.2001), *review denied* (Minn. Aug. 15, 2001).

■■ Here, the same district court has presided over these proceedings for the past seven years—ever since appellant initially filed for dissolution in June 1998.

While the language of the district court's order amending the residency requirement of the judgment contemplates that respondent could reside in Grand Forks *until* the end of his legal education, it remains ambiguous as to what would transpire *after* respondent finished law school. Nor is there any other language in the judgment or elsewhere in the record clearly showing that the district court decided or intended to decide what the children's residence could or should be in 2004. We therefore presume that the district court was aware of its own language and, nevertheless, decided to deny appellant's motion requesting that respondent return the children to Minnesota. On this record, and considering the weight that appellate courts give a district court's reading of its own judgment, we cannot say that the district court clearly erred by resolving the ambiguity in the amended judgment by reading it to not require respondent to return the children's residence to Minnesota when he completed law school.[1]

1. We also note that while respondent did not formally move the court for an order to permit removal of the children to North Dakota after completion of his legal education, in removal cases, there is an implicit presumption that the custodial parent's request to move his children to another state should be granted. In order to defeat the presumption, an opposing party must offer evidence that establishes that the move itself would be against the children's best interests and would endanger the children's health and well-being or be intended to interfere with visitation rights. *Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn.1996). None of these concerns appears to be implicated here, especially when appellant lives in Bemidji, Minnesota, less than 120 miles from Grand Forks, North Dakota. Accordingly, remanding this issue to the district court or requiring respondent to file a motion for removal would be futile at this juncture. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn.1985) (declining to remand and affirming the district court in a child-custody case when "from reading the files,

## II.

Appellant next argues that the district court abused its discretion by failing, at a minimum, to hold an evidentiary hearing as to whether the parties' daughter should undergo mental-health counseling because of respondent's continuous monitoring of their daughter's weight. We initially note that as legal custodian of the parties' daughter, respondent has "the right to determine the child's upbringing, including education, *health care,* and religious training." Minn.Stat. § 518.003, subd. 3(a) (2004) (emphasis added). Under Minn. Stat. § 518.176, subd. 1 (2004),

> the parent with whom the child resides may determine the child's upbringing, including ... health care ... unless the court after hearing, finds, upon motion by the other parent, that in the absence of a specific limitation of the authority of the parent with whom the child resides, the child's physical or emotional health is likely to be endangered or the child's emotional development impaired.[2]

the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result).

2. We note that Minn.Stat. § 518.003, subd. 3(a), grants the *legal* custodian "the right to determine the child's upbringing, including education, health care, and religious training," whereas Minn.Stat. § 518.176 seems to grant that right to "the parent with whom the child resides" or the *physical* custodian. *See* Minn.Stat. § 518.003, subd. 3(c) (2004) (" 'Physical custody and residence' means the routine daily care and control and the residence of the child."). But here, because respondent is both the legal and physical custodian of the children, we need not address whether there is a conflict between the statutes or, if there is, how to resolve it. *Contra Novak v. Novak*, 446 N.W.2d 422, 424–25 (Minn.App.1989) (noting possible discrepancies between the rights granted under Minn. Stat. § 518.176, subd. 1, which was enacted in 1978, and rights granted under Minn.Stat.

To be clear, it is important to note that appellant has not challenged the current custody arrangement, but instead has challenged respondent's decisions relating to their daughter's mental health on this issue. By moving the district court to order mental-health counseling for the parties' daughter, contrary to respondent's wishes, appellant challenges respondent's decisions regarding the daughter's health care, thereby implicating Minn.Stat. § 518.176, subd. 1.

## A. Limitation on Custodial Parent's Authority and Custody Modification

Caselaw addressing application of Minn. Stat. § 518.176, subd. 1, is limited. But the statute requires a showing by the moving party that, absent a court order, "the child's physical or emotional health is likely to be endangered or the child's emotional development impaired." Minn.Stat. § 518.176, subd. 1. Thus, the considerations involved in evaluating a motion to limit a custodian's ability to make health-care decisions are similar to those used to evaluate endangerment-based motions to modify custody. *See* Minn.Stat. § 518.18(d)(iv) (2004) (instructing district courts, in endangerment-based motions to modify custody, to retain existing custody arrangements unless there are changed circumstances showing modification is in the child's best interests and "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child").

This similarity of considerations is consistent with the fact that the statutory language in Minn.Stat. § 518.176, subd. 1, regarding motions to limit a custodial parent's authority to make health-care decisions is nearly identical with the language relating to custody modifications found in Minn.Stat. § 518.18(d)(iv). *Compare* Minn.Stat. § 518.176, subd. 1 (stating that, generally, a district court may not limit a custodial parent's ability to make health-care decisions for a child unless the district court finds that "the child's physical or emotional health is likely to be endangered or the child's emotional development impaired"), *with* Minn.Stat. § 518.18(d)(iv) (requiring district court not to grant an endangerment-based motion to modify custody unless "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development"). Given the similarities between Minn.Stat. § 518.176, subd. 1, and Minn.Stat. § 518.18(d)(iv), we conclude that the considerations that a district court uses to evaluate a motion to limit a custodial parent's ability to make health-care decisions under Minn.Stat. § 518.176, subd. 1, should be informed by the considerations used to evaluate endangerment-based motions to modify custody.

In the custody-modification context, a district court can deny a motion to modify custody without an evidentiary hearing if the moving party fails to allege a prima facie case composed of facts that, if true, would provide sufficient grounds to modify custody. *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981). In *Nice–Petersen,* the supreme court upheld the denial of a noncustodial parent's motion for custody modification without a hearing because no prima facie showing was made. *Id.* In order to establish a prima facie case for modification, we have held that a movant must establish the fol-

§ 518.003, subd. 3, which was enacted in 1981, and resolving discrepancies in favor of the more recently enacted Minn.Stat.

§ 518.003, subd. 3), *review denied* (Minn. Dec. 1, 1989).

lowing four elements: (1) a change in circumstances prior to modification; (2) that modification serves the best interests of the child; (3) that the child is presently endangered; and (4) that the balance of harm favors modification. *See, e.g., In re Weber,* 653 N.W.2d 804, 809 (Minn.App. 2002); *Geibe v. Geibe,* 571 N.W.2d 774, 778 (Minn.App.1997).

When determining whether a party has established a prima facie case for child-custody modification, the court must accept the facts alleged in the movant's affidavit as true and disregard any contrary evidence. *Abbott v. Abbott,* 481 N.W.2d 864, 867–68 (Minn.App.1992). Nevertheless, a district court may use an opposing party's affidavit to "explain the circumstances surrounding the accusations." *Geibe,* 571 N.W.2d at 779. Evidentiary hearings are strongly encouraged in the custody-modification context if there are allegations of present endangerment to a child's health or emotional well-being. *Ross v. Ross,* 477 N.W.2d 753, 756 (Minn. App.1991). The endangerment standard requires a "significant degree of danger," which includes danger purely to emotional and psychological development.[3] *Geibe,* 571 N.W.2d at 778 (quotation omitted).

**B. Standard of Review**

We review a district court's decision to deny a motion to modify custody without an evidentiary hearing for an abuse of discretion. *Geibe,* 571 N.W.2d at 777–78. But under Minn.Stat. § 518.176, subd. 1, the custodial parent may determine a child's health care "unless the court

after hearing, finds ... that in the absence of a specific limitation of the authority of the [custodial parent], the child's physical or emotional health is likely to be endangered or the child's emotional development impaired." In light of this statute's explicit requirement of a hearing to impose a limitation on a custodial parent's authority, a requirement not explicitly found in Minn. Stat. § 518.18, we hold that an evidentiary hearing is required as a matter of law under Minn.Stat. § 518.176, subd. 1, if the moving party establishes a prima facie case. Thus, while Minn.Stat. § 518.18 and Minn.Stat. § 518.176, subd. 1, both give the district court discretion to determine whether the moving party establishes a prima facie case, the analyses under the two provisions are not identical. Under Minn.Stat. § 518.18, a denial of a motion to modify without a hearing is reviewed for an abuse of discretion, but our holding that the presence of a prima facie case for a limitation under Minn.Stat. § 518.176, subd. 1, requires a hearing as a matter of law, means that a denial of a limitation motion without a hearing must be reviewed de novo.

**C. Prima Facie Case**

Here, appellant has challenged the district court's decision to deny appellant's motion to limit respondent's authority to make certain health-care decisions for the parties' daughter without an evidentiary hearing. We therefore must determine whether appellant has made a prima facie case for limiting respondent's authority to make health-care decisions in this instance.

**3.** In addition, when the district court denies a motion for modification of child custody without holding an evidentiary hearing, it is not required to provide specific findings of fact. *See Axford v. Axford,* 402 N.W.2d 143, 145 (Minn.App.1987) (concluding that the "requirements for specific findings do not apply to the evaluation of affidavits"). "[W]hen an

evidentiary hearing is denied, the record consists of the affidavits the moving party submitted in support of the modification motion. Because the record is documentary, the appellate court can review the [district] court's determination in a meaningful manner despite the lack of specific findings." *Abbott,* 481 N.W.2d at 867.

## 1. Change in Circumstances

A change in circumstances must be significant and must have occurred since the original custody order, rather than being a continuation of conditions that existed prior to the order. *Cf. Weber*, 653 N.W.2d at 809 (noting same in the custody-modification context). Here, the record reflects that respondent's reaction to his daughter's weight did not seem to be an issue at the time of the initial custody determination in April 2000 when she was five years old, although respondent did begin to "express[ ] concerns about [her] disproportionate weight gain" around that time. Regardless of specific timing, it cannot be disputed that respondent's concern about his daughter's weight has escalated in recent years. Moreover, respondent began to regularly weigh his daughter at home only after the initial custody determination was made. Based on the record before this court, we conclude that a substantial change in circumstances has occurred since the original custody award.

## 2. Endangerment

The gravamen of the present dispute centers on whether the parties' daughter (now 10 years old) has been or is presently endangered or her emotional development impaired by respondent's vigilant monitoring of her weight. In her affidavit, appellant alleges:

> Respondent is being cruel to [our daughter] by refusing the offer to have her see a nutritionist ..., refusing to enroll her in counseling, disobeying the child protection recommendations and not getting appropriate medical care for [our daughter], being very derogatory to the children including swearing at them *and refusing to stop weighing [our daughter] against her will even when she was visibly traumatized by it (he makes her get on [a] scale when she gets out of the shower with only a towel and won't let her eat if she won't get on the scale).*

(Emphasis added.) Appellant essentially claims that respondent has made detrimental health-care decisions relating to her daughter's emotional health and development by refusing certain therapeutic treatment.

In addition, the Grand Forks County Social Service Center (social services) recommended counseling for the parties' daughter because respondent had been "monitoring [the daughter's] weight on a weekly basis for a good duration of time which has had an emotional impact on her." Social services ultimately recommended that respondent "refrain from weighing [his daughter] to monitor her weight."

For his part, respondent explains:

> My concern [for my daughter's weight] is thoughtfully founded on my observation of ... her eating habits, medical advice and records, [and] information from the Center for Disease Control.... I monitored [my daughter's] weight in a responsible, unobtrusive way, and it did not become an issue until I sent [appellant] a letter during the summer of 2003 setting forth my concerns regarding [my daughter's] diet while at [appellant's] residence.

We conclude that the factual allegations asserted by appellant in her affidavit rise to a level of emotional endangerment that, if true, could place the parties' daughter in a "significant degree of danger." *Ross*, 477 N.W.2d at 756. Emotional abuse alone may constitute sufficient endangerment, and when an allegation of such abuse is supported by some evidence, an evidentiary hearing is appropriate. *See, e.g., Abbott*, 481 N.W.2d at 868–69

(reversing denial of hearing when mother's history of throwing children out of house created stress and anxiety in anticipation of being thrown out again in the future); *Harkema v. Harkema*, 474 N.W.2d 10, 14 (Minn.App.1991) (reversing denial of hearing where allegations of emotional abuse by stepfather who was "yelling, throwing things, hitting walls, and driving the car like a maniac"); *Lilleboe v. Lilleboe*, 453 N.W.2d 721, 724 (Minn.App.1990) (reversing denial of hearing where facts alleged might have established endangerment of child's emotional health or development).

### 3. Best Interests of the Child

■ A child's best interests are determined according to the factors listed in Minn.Stat. § 518.17 (2004). *Cf. Weber*, 653 N.W.2d at 810 (discussing factors in the custody-modification context). In a challenge to the limits of a custodial parent's authority, the best-interests factors are closely tied to the endangerment factor. One best-interests factor includes "the mental and physical health of all individuals involved." Minn.Stat. § 518.17, subd. 1(9) (2004). If a child's emotional well-being is endangered, her best interests are clearly not being met. Accordingly, if true, the allegations contained in appellant's affidavit are sufficient to make a prima facie case that limiting respondent's authority to make health-care-related decisions may be in the daughter's best interests.

### 4. Balance of Harm

■ In order to obtain an evidentiary hearing, appellant must also show that the advantage of limiting the custodial parent's authority outweighs the harm likely to be caused by the change. *Cf. Weber*, 653 N.W.2d at 811–12 (addressing balance of harm in the custody-modification context). It is true that Minnesota

law presumes that stability is in a child's best interests. *Id.* at 811. But here, if appellant's allegations prove to be true, the status quo—including respondent's continued monitoring of his daughter's weight and his refusal to permit her to attend counseling—would prove more harmful than beneficial. We conclude that the advantage in relieving the parties' daughter from the present arrangement would outweigh any harm to the daughter and satisfy the fourth element of a prima facie case for limitation of respondent's authority.

### D. Conclusion

■ We are not suggesting that a noncustodial parent may use Minn.Stat. § 518.176, subd. 1, as a means to interfere with the custodial parent's decision-making regarding a child's upbringing. In fact, the very purpose of this statute, which is identical with the uniform law, is "to promote family privacy and to prevent intrusions upon the prerogatives of the custodial parent at the request of the noncustodial parent." Unif. Marriage & Divorce Act § 408 (1973), 9A U.L.A. cmt., at 437 (1998). Moreover, courts should not intervene solely because a noncustodial parent believes that a decision made by the custodial parent is thought to be contrary to the child's best interests. *Id.* at 437–38. Instead, Minn.Stat. § 518.176, subd. 1, requires a higher threshold. As the commentary to the uniform law explains:

> To justify [judicial] intervention, the judge must find that the custodial parent's decision would "endanger the child's physical health or significantly impair his emotional development"—a standard patently more onerous than the "best interest" test. The standard would leave to the custodial parent such decisions as whether the child should go to private or public school, whether the child should have music lessons, what church the child should attend. *The*

*court could intervene in the decision of grave behavioral or social problems* such as refusal by a custodian to provide medical care for a sick child.

9A U.L.A. cmt., at 438 (emphasis added).

In congruence with this commentary, courts should err on the side of requiring an evidentiary hearing when a child's health or emotional well-being are at stake. *Lilleboe*, 453 N.W.2d at 724. As this court has previously explained, "[e]videntiary hearings are *strongly encouraged* in these circumstances to protect the best interests of the child." *Id.* (emphasis added); *see also Ross*, 477 N.W.2d at 756 (noting that evidentiary hearings are strongly encouraged in the face of allegations of present endangerment); *Harkema*, 474 N.W.2d at 14 (same). Because we conclude that appellant has established a prima facie case in support of a limitation on respondent's authority to make healthcare decisions, and appellant's affidavit, when accepted as true, establishes that respondent has placed his daughter's present and future emotional well-being in a "significant degree of danger," the district court erred by denying an evidentiary hearing.

## DECISION

Because we defer to the district court's interpretation of its own judgment, we affirm its decision to deny appellant's motion to return the children's residence to Minnesota. But because appellant has alleged facts sufficient to establish a prima facie case for limitation of respondent's authority under Minn.Stat. § 518.176, subd. 1 (2004), we reverse and remand for an evidentiary hearing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**