*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0514**

In Re the Marriage of:

Beth Amy Gissibl, petitioner,
Respondent,

vs.

Matthew Glen Gissibl,
Appellant.

**Filed September 2, 2025**
**Affirmed**
**Reyes, Judge**

Dakota County District Court
File No. 19AV-FA-22-8

Micaela Wattenbarger, Kerry Minnich, Maenner Minnich PLLC, Minnetonka, Minnesota (for respondent)

Matthew Glen Gissibl, Farmington, Minnesota (self-represented appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Appellant-father challenges a district court order modifying a prior custody order and granting sole legal and sole physical custody to respondent-mother. We affirm.

# FACTS

Appellant-father Matthew Glen Gissibl and respondent-mother Beth Amy Gissibl married in 2007 and share two children, A.G. (son) and M.G. (daughter)  In early 2022, mother filed a petition for dissolution of marriage and sought sole physical and sole legal custody of the children, as well as a division of the marital property and marital debts.

In September 2022, the district court issued an order adopting the parties' agreement with stipulated findings of fact, conclusions of law, and order for judgment and decree. The order required father to pay $216 per month in child support and awarded joint physical and joint legal custody to the parties.  The district court imposed a 5-2-2-5 parenting schedule, with father having the children every Monday and Tuesday overnight and mother having the children every Wednesday and Thursday overnight and the parties alternating every other weekend from Friday evening to Monday morning.  The order also set mother's home as the children's primary residence.

In November 2023, mother filed a motion to, among other actions, modify the September 2022 order by (1) suspending father's parenting time with son because son began living with her full time after he told her that he had been struggling with his mental health; (2) modifying his parenting time with daughter; and (3) modifying the parties' child-support obligations.  In support of her motion, mother submitted an affidavit stating that father and son had a "significant breakdown" in communication, father had limited son's privacy, and that father had not spent any time with son since January 2023.  After months of struggling with thoughts of self-harm due to his strained relationship with father, son, with the support of a therapist, declined to go to his father's home.  During that time,

2

son's suicidal thoughts became less frequent. Father contacted son and told him that he would no longer keep son's belongings in his home and that if son did not get his belongings by October 31, 2023, they may be thrown away. Mother further claimed that father's failure to "engage [son] in therapy" and then telling him to "get [his] stuff or [father will] throw it out" equated to emotional endangerment. Mother also requested that the district court reduce father's parenting time with daughter because daughter and son struggled being away from one another due to their close relationship.

Mother also expressed concern about father's mental health and how it had been "negatively impacting" their children. Father's sister, L.B., also submitted an affidavit in support of mother's motion to modify custody. L.B. echoed mother's concerns about father's mental health and the potential impact it may have on the children. L.B. stated that father "need[ed] help" and she noted a drastic change in his behavior since 2021. Father did not file a response to mother's motion.[1]

In December 2023, the parties appeared for the hearing on mother's motions. The district court issued an order on April 5, 2024, finding that mother established a prima facie case of endangerment to justify an evidentiary hearing to consider whether to modify the September 2022 order.

Following a court trial on June 5 and 6, 2024, in which mother testified about her concerns for daughter's safety while in father's care, the district court temporarily

---

[1] Father filed an objection to mother's proposed order to grant her motion. Father argued that the "[district] court[] MAY NOT intervene to mediate the equitable distribution of assets" and that, while children are not assets, "the state cannot interfere in determining custody without a rigorous standard of proof demonstrating one parent's unfitness."

3

suspended father's parenting time with son indefinitely and suspended father's parenting time with daughter for the weekend. During the trial, the district court held father in contempt and ordered that he be removed from the courtroom because he refused to sit down or respond to the district court. The district court also appointed a guardian ad litem (GAL) to assess the custody and parenting-time arrangements for the children. Mother requested that father's parenting time be supervised until the GAL completed their report.

In August 2024 report, the GAL summarized two interviews with mother, who explained that father began "drinking his own urine" in 2021 and wanted to explore the "health benefits from doing so by completing a urine fast and massaging it into various body parts." Mother also discussed several incidents in which father picked up daughter from daycare outside of his scheduled time and during the middle of a soccer game when mother stepped away to get water for daughter.[2] The GAL also interviewed father, who reported no mental-health issues, but declined to discuss the incidents in which he took daughter outside of his parenting time based on the advice of his attorney because there were pending criminal matters. The GAL also interviewed the children, who discussed the differences between mother's and father's parenting styles. Son recalled an instance in which father locked him in a room for 24 hours without food or water or access to the bathroom. After interviewing the entire family and son's therapist, the GAL recommended that (1) mother be awarded temporary sole legal and physical custody of the children;

---

[2] Mother sought, and the district court granted, an OFP against father for herself and the children following these incidents.

4

(2) father's parenting time with both children be temporarily suspended; and (3) mother and father complete psychological examinations.

In December 2024, the parties appeared before the district court to review the GAL's updated recommendations for permanent custody. Father stated that he did not complete the psychological examination and further indicated that he was not going to because the examination was "a violation" of "the Constitution." Father also stated that "judicial proceedings" need to occur "before any of [his] constitutional rights can be violated" and argued that the district court violated his rights by not affording him a jury trial. The district court informed father that a family law trial is not held before a jury and that judicial proceedings had been held in the case, including an evidentiary hearing.[3]

The district court granted mother's motion to modify the September 2022 order, finding that father had endangered the children by (1) failing to engage in the therapeutic process with son while son struggled with suicidal ideation and (2) taking daughter from mother's custody during her soccer game. The district court also thoroughly analyzed whether modification was appropriate based on the best-interests factors articulated in Minn. Stat. § 518.17 subd. 1(a) (2024), and the district court found that all the factors weighed in favor of mother. The district court also found that it was in the children's best interests to have no contact with father unless he completes a psychological evaluation. The district court awarded mother sole legal and sole physical custody of the children and suspended father's parenting time.

---

[3] Throughout the proceeding, father repeatedly filed jury-trial demands and challenged the district court's authority to hear the case.

With respect to mother's request for child support, the district court found that the parties' combined monthly income totaled $15,245, with mother's monthly income at $6,993 and father's monthly income at $8,252. Based on that information, the district court set father's monthly child-support obligation at $1,500.00. The district court further found that father owed $12,597.12 in child-support arrears and that his failure to participate in the litigation caused an unreasonable delay, and awarded $32,121.00 in conduct-based attorney fees to mother.

This appeal follows.

## DECISION

**I. The district court acted within its discretion by modifying the child-custody arrangement in the September 2022 order based on a change of circumstances due to child endangerment and the best interests of the children.**

Father appears to argue that the district court abused its discretion by modifying the parties' custody arrangement. We are not persuaded.

The party seeking modification of a custody order under Minn. Stat. § 518.18 (d)(i), (iv) (2024) must show (1) a change in the circumstances of the child or parent; (2) a modification would serve the best interests of the child; (3) the child's current environment endangers [their] physical or emotional health or emotional development; and (4) the harm to the child that may be caused by the change of environment is outweighed by the benefits of a change of environment. *Geibe v. Geibe*, 571 N.W.2d 774, 777 (Minn. App. 1997). A threat of harm to a child may constitute endangerment. *Ross v. Ross*, 477 N.W.2d 753, 756 (Minn. App. 1991). An appellate court reviews a district court's custody determinations for an abuse of discretion. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). "A district

6

court abuses its discretion by making findings unsupported by the evidence or improperly applying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quoting *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022)).

Here, the district court modified the child-custody order twice. In June 2024, the district court modified the child-custody order when mother sought modification after son began exclusively living with her as he struggled with mental-health issues. In March 2025, the district court modified the custody order by suspending father's parenting time with their daughter after father took daughter outside of his parenting time.

Mother presented evidence that son struggled with suicidal ideation while in father's care and that father had also physically and emotionally abused son by locking him in a room for 24 hours without food or water and disowned him on various occasions. Mother reported that father's mental health had been deteriorating for several years and that he had begun drinking his own urine, stockpiling food, firearms, and ammunition. Mother, who obtained an OFP against father, also presented evidence that father grabbed daughter during a soccer game, outside of his parenting time, while mother filled daughter's water bottle, and that when law enforcement later located daughter in father's car, she had a scratch on her cheek. In addition, on several occasions, father declined to provide medical treatment to daughter when she had a fever and failed to assist son with seeking mental-health treatment while he struggled with suicidal thoughts. Mother's evidence shows a change of circumstances based on endangerment due to father's actions and mental-health issues which could impede his ability to provide adequate care for the children physically,

emotionally, and mentally. The record further demonstrates that father repeatedly disregarded orders from the district court, including its request that he complete a psychological evaluation and attend therapy.

In addition, the district court thoroughly analyzed each of the best-interests factors in determining whether mother should be awarded sole physical and sole legal custody of the children and found that they weighed in favor of granting mother's motion. The district court acted within its discretion by modifying the custody order because mother demonstrated that father's continued presence around the children, given his disregard for prior orders and other unsafe, erratic behaviors, endangered the children and were not in their best interests. Because the district court's findings are supported by the record, we need not analyze each of the best-interests factors. *Wilson v. Moline*, 47 N.W.2d 865, 870 (Minn. 1951) (stating that function of appellate court is not to "discuss and review in detail the evidence for the purpose of demonstrating that it supports the [district] court's findings" and that "[o]ur duty is performed when we consider all the evidence, as we have done here, and conclude that it reasonably supports the findings."). Moreover, we review a district court's findings on the best-interests factors for clear error. *Thornton v. Bosquez*, 933 N.W.2d 781, 789-790 (Minn. 2019). We review district courts' custody decisions for an abuse of discretion, mindful that there is little room to question their best-interests analysis. *In re Welfare of C.F.N.*, 923 N.W.2d 325, 334 (Minn. App. 2018), *rev. denied* (Minn. Mar. 19, 2019). Based on our careful review we discern no abuse of discretion by the district court.

**II.    The district court did not abuse its discretion by not providing father a jury trial regarding custody.**

Father also appears to argue that the district court abused its discretion by modifying custody of the children without providing him a jury trial. We disagree.

In Minnesota the right to a jury trial extends "to all cases at law without regard to the amount in controversy." Minn. Const. art. I, § 4; *see Abraham v. County of Hennepin*, 639 N.W.2d 342, 348 (Minn. 2002). However, that right does not extend to special proceedings. *Angelos v. Angelos*, 367 N.W.2d 518, 520 (Minn. 1985). A motion to modify custody, which arises under Minn. Stat. § 518.18, is a special proceeding. *Id*. Minn. Stat. § 518.168(c) (2024), provides that, in family law proceedings, the district court determines questions of law and fact "without a jury."[4]

Here, the district court acted within its discretion by denying father's request for a jury trial because father is not entitled to one under section 518.168(c). Because the district court decides questions of law and fact "without a jury" in family law proceedings, we discern no abuse of discretion by the district court.

**Affirmed.**

---

[4] We note that our analysis of this point assumes that family law cases are cases "at law" for purposes of *Abraham* and the relevant provisions of the constitution. We acknowledge that it is less than clear that this assumption is correct. *See, e.g.*, *Holmberg v. Holmberg*, 588 N.W.2d 720, 724 (Minn. 1999) (stating that "cases involving family law fall within the district court's original jurisdiction" because "[f]amily dissolution remedies, including remedies in child support decisions, rely on the district court's inherent equitable powers"); *Johnston v. Johnston*, 158 N.W.2d 249, 254 (Minn. 1968) (noting that "[s]ince the jurisdiction of the district court in divorce actions is equitable, relief may be awarded as the facts in each particular case and the ends of justice may require"). But because the parties do not address this point, we decline to do so.