In re the Marriage of: **Elizabeth Ann Murtha BOLAND a/k/a Elizabeth Ann Boland, petitioner, Appellant,**

v.

**Thomas Francis MURTHA, IV a/k/a Thomas Francis Murtha, Respondent.**

No. A10–1794.

Court of Appeals of Minnesota.

June 6, 2011.

William D. Siegel, Douglas G. Sauter, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for appellant.

Gary A. Debele, Walling, Berg & Debele, P.A., Minneapolis, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; JOHNSON, Chief Judge; and TOUSSAINT, Judge.

## OPINION

HUDSON, Judge.

Appellant-mother challenges the district court's denial of her motion to restrict respondent-father's parenting time without an evidentiary hearing. We remand because it appears that the district court failed to treat the allegations in mother's affidavits as true and to disregard assertions to the contrary in father's affidavits. We also deny father's motion for attorney fees on appeal because mother's appeal did not unreasonably contribute to the length or expense of the proceeding.

## FACTS

The parties were married on October 31, 1998, and their marriage was dissolved by judgment on January 11, 2005. The parties have joint legal custody of a daughter, K.M.M., who was born on October 25, 2000. Mother, who lives in St. Cloud, has sole physical custody of K.M.M. Father, who lives in Duluth and has a second home near Aitkin, initially agreed to reasonable parenting time to be arranged by the parties. But after the dissolution, mother significantly limited father's access to K.M.M., generally not allowing his visits to

exceed five hours and permitting him only one overnight visit in four years.

In December 2008, father moved to modify the judgment to allow him to exercise overnight parenting time at the Aitkin home. Mother objected, asserting that father did not understand the severity of K.M.M.'s asthma and allergies and that father's Aitkin home is not safe for K.M.M. The district court found that mother's concerns were largely unfounded; it awarded father overnight parenting time during certain weekends, holidays, and school vacations. It also ordered father to meet with K.M.M.'s physicians and purchase any prescribed equipment and medications. The record does not show that mother appealed this order.

Slightly more than one year after the district court granted father's motion, mother moved the district court to appoint a parenting-time expeditor to investigate parenting time; to restrict father's parenting time pending the investigation; and for an evidentiary hearing on her motion. Mother submitted five affidavits in support of her motion: one from herself, one from K.M.M.'s therapist, and three from mother's acquaintances. Mother's affiants alleged that father endangered K.M.M. because he left K.M.M. alone in public places, including a public restroom and his car; he exposed K.M.M. to cats and ragweed, to which K.M.M. is allergic; and he has become angry with K.M.M., made her feel "stupid," and minimized her feelings when she has expressed fears and concerns regarding her visits to the Aitkin home. Mother's affiants also allege that K.M.M. is exhibiting signs of emotional harm in that she has become "extremely difficult and stressed"; she has hyperventilated prior to visits with father; and she once threatened to run away to avoid a visit with father.

Father submitted six opposing affidavits from himself, his wife, his brothers, his sister-in-law, and his mother-in-law. Father's affiants deny that father has left K.M.M. alone in public places. Father's affiants also deny that father has exposed K.M.M. to cats or ragweed. Father admits that he took K.M.M. to two homes where the owners had cats and that he took K.M.M. on a walk during which they saw ragweed, but he denies that K.M.M. was in direct contact with cats or ragweed. Father's affiants further deny that father has become angry with K.M.M., demeaned her, or minimized her fears. Father admits that he and his wife have different approaches to discipline and parenting from mother, which may have led to K.M.M.'s complaints about parenting time. Father's affiants describe K.M.M. as a happy child, and father posits that if K.M.M. is experiencing any emotional or behavioral problems, they are not a result of any mistreatment during parenting time, but are instead a consequence of mother sharing unfounded concerns about father and father's home with K.M.M.

The district court considered the parties' affidavits and concluded that mother failed to establish a prima facie case for restriction of father's parenting time and was not entitled to an evidentiary hearing. The district court stated that "generally each allegation made by [mother] is denied and refuted by [father]." The district court noted that mother's allegations are informed by mother's history of "significantly overreacting to rather common emotional upsets by [K.M.M.], and overanalyzing those upsets." The district court further noted that, although K.M.M.'s therapist raised a number of concerns regarding K.M.M.'s well-being, her affidavit deserved little weight because "[she] had no input whatsoever from [father], and made no effort to contact him." This appeal follows.

## ISSUES

I. What are the proper standards for this court's review of the district court's denial of mother's motion?

II. Did the district court properly consider mother's allegations in determining that mother had not established a prima facie case for the restriction of father's parenting time and that she was not entitled to an evidentiary hearing?

III. Should father be awarded attorney fees on appeal?

## ANALYSIS

### I

■ This appeal involves mother's motion to "restrict" father's parenting time. A district court may restrict parenting time if parenting time is likely to endanger or impair the child's physical or emotional health, and the restriction of parenting time is in the child's best interests. Minn.Stat. § 518.175, subd. 5(1) (2010).[1] In addressing a motion to restrict parenting time, the district court applies the analytical framework that was developed for evaluating a motion to modify custody in *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981). *See Lutzi v. Lutzi,* 485 N.W.2d 311, 315–16 (Minn.App.1992) (applying the *Nice–Petersen* procedure to a motion for substantial modification, including a restriction, of parenting time).

■ A party moving to modify custody shall support the motion with "an affidavit setting forth facts in support of modifica-

tion." *Nice–Petersen,* 310 N.W.2d at 472 (citing Minn.Stat. § 518.185 (1980), which is substantially the same as the current statute). "[U]nless the accompanying affidavits set forth sufficient justification, if the facts alleged therein are true, for the modification," the district court is "require[d] to deny a motion for modification of a custody order." *Id.* Here, the parties disagree on the appropriate standard by which this court should review the district court's application of the *Nice–Petersen* framework and, regardless of the appropriate standard of review, they also disagree as to whether the district court reached the proper result in applying that framework.

We begin by examining the case law regarding the standard for reviewing the district court's performance of the *Nice–Petersen* analysis. In *Nice–Petersen,* the supreme court concluded that the district court did not abuse its discretion in denying a motion to modify custody based on the affidavits without an evidentiary hearing. *Id.* But in *Ross v. Ross,* this court determined that the district court erred as a matter of law in concluding that the affidavits did not make a prima facie showing for a modification of custody and that an evidentiary hearing was not necessary. 477 N.W.2d 753, 756–57 (Minn.App.1991). Understandably, our decision in *Ross* led to confusion about whether an abuse-of-discretion or de novo standard of review applies.

We later clarified that *Nice–Petersen,* not *Ross,* establishes the standard for reviewing whether the district court properly

---

1. A reduction of parenting time is not necessarily a restriction of parenting time. *Dahl v. Dahl,* 765 N.W.2d 118, 123 (Minn.App.2009) (citing *Danielson v. Danielson,* 393 N.W.2d 405, 407 (Minn.App.1986)). Whether a change in parenting time constitutes a restriction requires the district court to consider the reasons for the change as well as the amount of the reduction. *Anderson v. Archer,* 510 N.W.2d 1, 4 (Minn.App.1993). Restriction can occur when a change to parenting time is "substantial." *Matson v. Matson,* 638 N.W.2d 462, 468 (Minn.App.2002). There is no dispute that mother is seeking a restriction of father's parenting time.

evaluated a motion to modify custody or restrict parenting time. *See Geibe v. Geibe,* 571 N.W.2d 774, 778 (Minn.App. 1997) (noting that *Ross* did not cite *Nice–Petersen* and that this court and the supreme court had applied *Nice–Petersen's* abuse-of-discretion standard of review in cases decided subsequent to *Ross* ). But we have also since recognized that the *Nice–Petersen* procedure is more complicated than it may seem at first blush because it involves multiple determinations by the district court, at least two of which are subject to different standards of review. *See Szarzynski v. Szarzynski,* 732 N.W.2d 285, 292 (Minn.App.2007) (outlining the *Nice–Petersen* procedure and the standards for reviewing each requisite determination).

First, the district court must accept the facts in the moving party's affidavits as true, disregard the contrary allegations in the nonmoving party's affidavits, and consider the allegations in the nonmoving party's affidavits only to the extent they explain or contextualize the allegations contained in the moving party's affidavits. *Id.* (citing *Geibe,* 571 N.W.2d at 777).[2] Second, the district court determines, in its discretion, whether the moving party has made a prima facie showing for the modification or restriction. *See, e.g., Goldman v. Greenwood,* 748 N.W.2d 279, 285 (Minn.2008) (stating that "[t]he district court did not abuse its discretion in concluding that respondent failed to make a prima facie case of endangerment"); *Geibe,* 571 N.W.2d at 780 (stating that the district court did not abuse its discretion in finding that a prima facie showing for modification had not been established). Finally, "[w]hether a party makes a prima facie case to modify custody is dispositive

of whether an evidentiary hearing will occur on the motion." *Szarzynski,* 732 N.W.2d at 292 (citing *Morey v. Peppin,* 375 N.W.2d 19, 25 (Minn.1985) and *Nice–Petersen,* 310 N.W.2d at 472).

The source of the parties' disagreement about our standard for reviewing the district court's application of the *Nice–Petersen* analysis is *Griese v. Kamp,* 666 N.W.2d 404 (Minn.App.2003), *review denied* (Minn. Sept. 24, 2003). In *Griese,* the father moved to modify custody, asserting that the mother's use of drugs endangered the parties' child. 666 N.W.2d at 405–06. In support of his motion, the father submitted various affidavits, including affidavits from the child's maternal grandparents. *Id.* Shortly after submitting affidavits in support of the father's motion, however, the maternal grandparents submitted additional affidavits in support of the mother's opposition to the father's motion. *Id.* at 406. The maternal grandparents' additional affidavits qualified in part and contradicted in part the affidavits they had submitted in support of the father's motion. *Id.*

The district court stated that "it could not take the [maternal grandparents'] initial affidavits as true because they were 'directly contradicted, explained and/or compromised, by subsequent affidavits of the same individuals.'" *Id.* at 406. The district court further explained that the other affidavits submitted by father were insufficient to establish a prima facie case for modification, but that those affidavits, in conjunction with the initial affidavits of the maternal grandparents, would have been sufficient to establish a prima facie case for modification. *Id.* The district court consequently determined that because father failed to show a prima facie

---

2. When we use the terms "moving party's affidavits" and "nonmoving party's affidavits," we are not only referring to the affidavits signed by the parties themselves, but to all affidavits submitted by a party in support of or in opposition to a motion.

case for the modification, he was not entitled to an evidentiary hearing, and the court denied his motion for modification. *Id.* at 407.

On appeal in *Griese,* we began by identifying the proper standard for reviewing an order denying a motion to modify custody without an evidentiary hearing. *Id.* We acknowledged that an appellate court ordinarily applies an abuse-of-discretion standard of review. *Id.* (citing *Geibe,* 571 N.W.2d at 777). But we concluded that a de novo standard of review was appropriate because we were called upon to interpret the same affidavits that were available to the district court. *Id.* (citing *Ross,* 477 N.W.2d at 755–56).

Reviewing the district court's decision de novo, we criticized the district court for acting "directly contrary to the rule that the court must accept as true the movant's affidavits, must disregard any affidavits directly contrary to the *movant's* affidavits, and may only use those contrary affidavits to explain the circumstances surrounding the accusations." *Id.* at 408 (quotation omitted). We explained that the district court had done "precisely the opposite" by taking as true the additional affidavits submitted in support of the non-moving party and disregarding the initial affidavits submitted in support of the moving party. *Id.* We therefore concluded that "[b]ecause the conflicting affidavits demonstrate that an evidentiary hearing is needed to ascertain whether [the child] is in a dangerous situation, we hold that the district court erred by denying an evidentiary hearing." *Id.* at 409.

Mother points out that here, as in *Griese,* this court can interpret affidavits that are available to us in the same form as they were available to the district court. *See id.* at 407. Therefore, she argues, this court is required to review de novo the district court's determination that she

failed to make a prima facie showing for restricting father's parenting time.

Mother misreads *Griese.* In *Griese,* we were called upon to review the district court's determination as to the first step of the *Nice–Petersen* analysis—whether the district court treated the allegations in the moving party's affidavits as true, disregarded the contrary assertions in the non-moving party's affidavits, and considered the allegations in the nonmoving party's affidavits only to the extent they contextualized or explained those in the moving party's affidavits. *Id.* at 407–08; *see also Szarzynski,* 732 N.W.2d at 292. And we reviewed that determination—not the determination of whether father had established a prima facie case for modification—de novo, for two reasons: the parties' affidavits were available to us in the same form as to the district court, and the affidavits did not form the basis for any findings by the district court. *Id.* at 407; *see also Ross,* 477 N.W.2d at 755–56 (stating that de novo review is appropriate when the district court makes no findings of fact and the appellate court is presented with the same evidence presented to the district court). Thus, we read *Griese* to stand for the proposition that because we can examine the parties' affidavits ourselves and ascertain whether the district court's interpretation of the affidavits was indeed correct, we need not defer to the district court's determination of which allegations it must treat as true, which allegations it must disregard, and which allegations it may consider as context or explanation. *See Griese,* 666 N.W.2d at 407–08.

Significantly, however, we do not interpret *Griese* to modify in any way the abuse-of-discretion standard used to review the district court's second determination in addressing a motion to modify custody—whether the moving party's allegations and the nonmoving party's explan-

atory statements establish a prima facie case for modification. *See Geibe,* 571 N.W.2d at 780 (reviewing for an abuse of discretion the district court's determination that the moving party failed to establish a prima facie case for modification). In *Griese,* the district court stated that the affidavits it did consider "when coupled with the initial affidavits from the [maternal] grandparents—did establish the requisite prima facie case to require an evidentiary hearing," and there is no indication that mother filed a notice of related appeal in regard to this determination. *Griese,* 666 N.W.2d at 406. Thus, we had no occasion to review the district court's determination as to a prima facie showing for a modification of custody. *See id.* Instead, at the conclusion of *Griese,* we were faced with the question of whether the district court erred as a matter of law by denying an evidentiary hearing, despite the fact that it explicitly admitted that the allegations in the affidavits submitted by father, if taken as true, established a prima facie showing for the modification. *See id.* It was this final determination—and the initial determination of whether the district court treated the allegations in father's affidavits as true—that we reviewed de novo, not the determination of whether a prima facie showing had been made. *See id.*

Finally, both pre- and post-*Griese* case law unambiguously indicates that whether a prima facie case to modify custody is present is a determination that is discretionary with the district court. *Szarzynski,* 732 N.W.2d at 292 (noting that a district court "has discretion in deciding whether a moving party makes a prima facie case to modify custody"); *Geibe,* 571 N.W.2d at 780 (reviewing for an abuse of discretion the district court's determination that the moving party had failed to

establish a prima facie case for modification).

In sum, when this court reviews an order denying a motion to modify custody or restrict parenting time without an evidentiary hearing, we review three discrete determinations. First, we review de novo whether the district court properly treated the allegations in the moving party's affidavits as true, disregarded the contrary allegations in the nonmoving party's affidavits, and considered only the explanatory allegations in the nonmoving party's affidavits. Second, we review for an abuse of discretion the district court's determination as to the existence of a prima facie case for the modification or restriction. Finally, we review de novo whether the district court properly determined the need for an evidentiary hearing.

## II

■ We now consider the issue of whether the district court treated the allegations of mother's affiants as true, disregarded the contrary assertions of father's affiants, and considered the statements of father's affiants only to the extent they contextualized or explained the allegations of mother's affiants. The district court acknowledged that it must accept mother's allegations as true, but its order does not indicate, explicitly or implicitly, whether it followed this directive. In particular, it does not appear that the district court treated as true mother's allegations that father left K.M.M. alone in public places, exposed her to allergens, and belittled her, causing K.M.M. to experience emotional and behavioral problems. Instead, the district court cataloged mother's allegations, listed father's assertions to the contrary, and found that "generally each allegation made by [mother] is denied and refuted by [father]."

The district court's order strongly suggests that the parties' contrary allegations were improperly weighed against each other. Absent further explanation, it does not appear that the district court assessed father's affidavits, disregarded those statements that contradicted the allegations in mother's affidavits, and considered only those assertions that explained or contextualized the allegations in mother's affidavits. Because the district court's order is insufficient to allow this court to discern whether it correctly engaged in the *Nice–Petersen* analysis, we remand for a determination under that analysis.

On remand, the district court must first take as true the allegations in the affidavits supporting mother's motion, ideally stating that it has done so. *See Szarzynski*, 732 N.W.2d at 292. Next, the district court must examine the affidavits submitted in support of father's opposition to mother's motion, distinguishing those statements that contradict the allegations of mother's affiants from those that explain or contextualize them—ideally, identifying those statements that are contradictory and those that are explanatory. *See id.* The district court must disregard contrary assertions, but may consider explanatory statements that place the allegations of mother's affiants in the proper context. *See id.* We note that, here, the assertions of father's affiants appear to contradict the allegations of mother's affiants in part and contextualize them in part.

The district court must then determine whether mother has established a prima facie case of endangerment that would warrant a restriction of parenting time. *See id.* In making this determination, the district court must bear in mind that "[t]he concept of 'endangerment' is unusually imprecise," and "[a]ny threat of harm to a child might arguably constitute endanger-

ment," but "the legislature likely intended to demand a showing of a significant degree of danger." *Ross*, 477 N.W.2d at 756. For these reasons, we entrust to the sound discretion of the district court the determination of whether the allegations supporting the motion—when taken as true and viewed in light of the explanatory statements in affidavits submitted in opposition to the motion—establish a prima facie case for restricting father's parenting time.

Finally, if the court concludes that a prima facie case exists, the district court must order an evidentiary hearing. *See Szarzynski*, 732 N.W.2d at 292. But if the district court concludes that a prima facie case does not exist, the district court must deny the petition without an evidentiary hearing. *Id.*

### III

■ Asserting that mother's appeal lacks legal or factual foundation, father moves this court for conduct-based attorney fees. *See* Minn.Stat. § 518.14, subd. 1 (2010) (allowing attorney fees to be awarded against a party whose conduct unreasonably contributes to the length or expense of a family-law proceeding). For the reasons set out above, we are remanding this matter to the district court for further proceedings. Therefore, mother's appeal does not lack merit, and we deny father's motion.

### DECISION

We remand for the district court to re-evaluate the affidavits submitted by the parties and to exercise its discretion consistent with the procedure set out in this opinion to determine whether mother has established a prima facie case for restriction of father's parenting time. We take no position on whether mother has in fact established a prima facie case of endangerment. In addition, the district court may,

in its discretion, reopen the record for additional evidence.

**Remanded; motion denied.**