*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0902**


Darick Joseph Waguespack, petitioner,
Appellant,

vs.

Jocelyn Alicia Merz,
Respondent.


**Filed January 19, 2016
Affirmed
Bjorkman, Judge**


Hennepin County District Court
File No. 27-FA-08-1797

Craig E. Shriver, Law Office of Craig E. Shriver, White Bear Lake, Minnesota (for appellant)

John C. Gunderson, Meier, Kennedy & Quinn, Chartered, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the denial of his motions to modify child custody and to compel discovery, arguing that he established a prima facie case for modification and that discovery is necessary to determine whether his child is endangered. We affirm.

## FACTS

Appellant Darick Joseph Waguespack and respondent Jocelyn Alicia Merz are the parents of S.A.M., who was born on February 9, 2007. The parties have joint legal custody and Merz has sole physical custody of S.A.M. pursuant to a June 8, 2012 stipulated judgment. The judgment awards Waguespack parenting time during the spring, summer, and holidays. Merz and S.A.M. live with Merz's mother and step-father, Alicia and James Calhoun, in St. Bonifacius. Waguespack resides in Texas with his wife and son.

In October 2014, Merz successfully completed a 21-day inpatient drug treatment program, after which she spent approximately one month in a sober house. S.A.M. continued to reside with the Calhouns during her absence. Upon learning of Merz's treatment, Waguespack moved the district court on March 5, 2015 to modify custody, arguing that he had presented a prima facie case based on changed circumstances that endangered S.A.M. Waguespack's supporting affidavit stated:

> I believe [Merz] has abused substances and relapsed multiple times since the prior [o]rder. [Merz] is currently in a full residential, secure treatment facility for drugs and/or alcohol abuse. Her step-father, Mr. Calhoun, disclosed this information to me . . . . [Merz] keeps relapsing and cannot remain sober. . . .

. . . .

I am very concerned that one of these days, [Merz]'s custodial environment is going to harm [S.A.M]. A sole custodian of a child that can't remain sober will expose the child to a whole host of potential unsafe environments, such as driving while impaired, exposing the child to drugs and alcohol, leaving the child in an unsafe place, or simply making a series of impaired judgments concerning the child's general safety and welfare. . . .

. . . .

. . . [Merz]'s inability and failure to maintain sobriety is detrimental to [S.A.M.'s] safety and welfare. . . .

. . . .

. . . It is paramount to [S.A.M.'s] best interests that I be awarded custody. It is contrary to the best interests of the child and to the child's safety and welfare to continue custody with a parent that cannot remain sober and has relapse after relapse. . . .

. . . .

. . . [S.A.M.] is still fairly young and can adjust to her new home where she will be safe and well cared for . . . . [T]he benefit of removing [S.A.M.] from a parent that has a very serious drug problem outweighs the harm that this emotional discomfort will bring. . . .

Merz opposed the motion, submitting her own affidavit and affidavits of the Calhouns. Those affidavits acknowledged Merz's treatment program and return to the Calhoun home. The Calhouns stated that S.A.M. remained in their home at all times and that Merz's relapse and treatment had little effect on S.A.M.'s day-to-day life.

On March 13, Waguespack moved the district court to compel discovery identifying the treatment facility and its treatment summaries or recommendations. The district court

3

denied both motions. In doing so, the court expressly credited Waguespack's factual allegations as true, but found that he failed to establish a prima facie case because he did not specifically assert that the recent circumstances endangered S.A.M. Instead, Waguespack only speculated about potential harm that could occur if Merz continued to abuse controlled substances. The district court noted that it was aware of Merz's substance-abuse history when it awarded her sole physical custody of S.A.M. Waguespack appeals.

**D E C I S I O N**

**I.      Waguespack did not establish a prima facie case to modify custody.**

A party seeking to modify a child-custody order must establish a prima facie case by showing: (1) a change of circumstances; (2) modification is necessary to serve the child's best interests; (3) the child's present environment endangers the child's physical health, emotional health, or emotional development; and (4) the benefits of the modification outweigh the detriments with respect to the child. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). The moving party must submit an affidavit setting forth facts supporting the requested modification, Minn. Stat. § 518.185 (2014), which the district court must accept as true. *Geibe v. Geibe*, 571 N.W.2d 774, 777 (Minn. App. 1997). A moving party's allegations are insufficient if they are conclusory or unsubstantiated. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007); *Axford v. Axford*, 402 N.W.2d 143, 144-45 (Minn. App. 1987) (holding that "an affidavit based almost entirely on unsubstantiated allegations" is not sufficient to modify custody). Other parties may file opposing affidavits, which the district court may consider if they provide context and are not contrary to the moving party's allegations. Minn. Stat. § 518.185; *Szarzynski*, 732

4

N.W.2d at 292. Whether a district court properly credited a moving party's affidavit is a question of law that we review de novo. *Boland v. Murtha*, 800 N.W.2d 179, 185 (Minn. App. 2011). But we review the district court's determination of whether a prima facie case for modification has been made for an abuse of discretion. *Id.*

Waguespack first argues that the district court erred by failing to credit his allegations as the law requires. We disagree. In his affidavit, Waguespack alleges that Merz relapsed and entered a residential drug treatment facility,[1] leading him to believe she had relapsed multiple times since the 2012 custody order. Waguespack further alleges that Merz's ongoing drug use is a changed circumstance that creates the potential for harm to S.A.M., and that it would be in S.A.M.'s best interests to be in his custody. Review of the district court's order demonstrates that the court expressly credited these allegations. But the district court found the allegations insufficient to establish a prima facie case for custody modification. A district court's obligation to credit a moving party's allegation does not require the court to grant an evidentiary hearing where the allegations are conclusory or lack specific evidentiary support. *See In re Weber*, 653 N.W.2d 804, 811 (Minn. App. 2002) (affirming district court's rejection of moving party's allegations when those allegations were not supported by first-hand knowledge); *Niemi v. Schachtschneider*, 435 N.W.2d 117, 119 (Minn. App. 1989) (holding district court did not clearly err by denying custody modification in absence of evidence of endangerment).

---

[1] The district court did not expressly credit Waguespack's allegation that Merz was *currently* in a residential treatment facility. But Waguespack does not challenge this omission. Waguespack's affidavit was completed on December 5, 2014, and Merz was physically present at the March 19, 2015 motion hearing.

Waguespack next argues that the district court abused its discretion because he established all four elements of his prima facie case. We address each element in turn. First, Waguespack must show that there has been a significant change of circumstances since the time of the last custody order. *Roehrdanz v. Roehrdanz*, 438 N.W.2d 687, 690 (Minn. App. 1989), *review denied* (Minn. June 21, 1989). Waguespack contends that Merz's October 2014 inpatient treatment constitutes such a change, but the district court was well aware of both parties' substance-abuse issues when it issued the 2012 custody order. The guardian ad litem also considered those issues when making her 2012 recommendations. While Waguespack alleges that Merz "keeps relapsing and cannot remain sober," his only specific assertion is that Merz entered treatment for 21 days in October 2014. Merz's brief relapse and stay in an inpatient treatment facility, all while S.A.M. had a seemingly unaffected home life, do not constitute a significant change in circumstances.

Second, Waguespack must show that custody modification is in S.A.M.'s best interests. When determining a child's best interests, courts consider any physical, mental, or chemical health issue a parent may experience that affects the child's safety or developmental needs. Minn. Stat. § 518.17, subd. 1(a) (2014). Waguespack does not allege that Merz's relapse and treatment had any effect on S.A.M. He only speculates that harm *may* occur, and argues that it is against S.A.M.'s best interests to be in the custody of a parent who experiences "relapse after relapse." We are not persuaded. Alicia Calhoun's affidavit shows that S.A.M. was healthy and safe in their home and maintained her

education and extra-curricular activities during her mother's October 2014 drug use and treatment. And there is no record evidence that Merz had any other relapses since 2007.

Third, Waguespack must show that S.A.M.'s present environment endangers her physical health, emotional health, or emotional development. Although the concept of endangerment is imprecise, this element requires the moving party to demonstrate a significant degree of danger. *Ross v. Ross*, 477 N.W.2d 753, 756 (Minn. App. 1991) (stating that "the legislature likely intended to demand a showing of a significant degree of danger"); *see, e.g., Harkema v. Harkema*, 474 N.W.2d 10, 13-14 (Minn. App. 1991) (holding that allegations of emotional abuse by stepfather who was "yelling, throwing things, hitting walls, and driving the car like a maniac" were sufficient to show endangerment). As noted above, Waguespack's affidavit speaks only of potential danger to S.A.M. occasioned by Merz's drug use. The affidavit is devoid of specific allegations of danger. In contrast, the Calhouns' affidavits provide specific information regarding S.A.M.'s *current* safety and welfare, and assure the court that S.A.M. is not in danger.

Finally, Waguespack must show that the benefits of custody modification outweigh the detriments to S.A.M. Waguespack attempts to make this showing by alleging that S.A.M. will benefit from moving to a home where she is safe and well cared for. But he significantly discounts the negative impact on S.A.M. that would result from removing her from the only home she has known. Waguespack contends that S.A.M. will be able to adjust to a new home because she is still "fairly young" and will continue to have contact with Merz. While he acknowledges the strong bond between Merz and S.A.M., he gives it little weight. The responsive affidavits provide evidence of the significant strength of

7

the maternal relationship, and provide information about S.A.M.'s connection to her school, neighborhood, church, clubs, and teams.

On this record, we discern no abuse of discretion by the district court in determining that Waguespack failed to establish a prima facie case to modify custody.

## II. The district court did not abuse its discretion by denying Waguespack's motion to compel discovery.

We review a district court's denial of a motion to compel discovery for an abuse of discretion. *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn. 1987). When a party seeking to modify custody has not established a prima facie case, he is not entitled to an evidentiary hearing and discovery is inappropriate. *Goldman*, 748 N.W.2d at 284; *see Nice-Peterson v. Nice-Peterson*, 310 N.W.2d 471, 472 (Minn. 1981) (stating that a moving party's burden is to allege facts—rather than gather evidence—sufficient to justify modification). Because Waguespack did not meet his prima facie burden, he is not entitled to an evidentiary hearing for which discovery might otherwise lie.

Waguespack argues that the district court should nonetheless have permitted discovery because the court had a special duty to investigate the allegations of potential harm to S.A.M. This argument is unavailing. We have recognized such a duty in only rare circumstances involving unrebutted allegations of abuse. In *Baum v. Baum*, we concluded that "under special circumstances, the [district] court has an obligation to investigate accusations that a child has been abused by the custodial parent." 465 N.W.2d 598, 600 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991); *see, e.g., Lucas v. Lucas*, 389 N.W.2d 744, 747 (Minn. App. 1986) (concluding district court was required to investigate

8

unrebutted evidence that removal of children from state would be harmful to them); *Murray v. Antell*, 361 N.W.2d 466, 470 (Minn. App. 1985) (concluding district court was required to investigate unrebutted evidence of physical abuse). These special circumstances are not present in this case. Waguespack has only speculated about harm that could occur if Merz relapses when S.A.M. is in her custody. It is undisputed that S.A.M. lives with Merz in the Calhoun home. And Waguespack has not alleged any specific harm or endangerment. We conclude that Waguespack's conclusory and unsupported allegations do not impose a special duty on the district court to investigate. Accordingly, the district court did not abuse its discretion in denying Waguespack's motion to compel discovery.

**Affirmed.**