*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1393**

Kathryn Suzanne Neufeld,
f/k/a Kathryn Suzanne Hare, petitioner,
Respondent,

vs.

Robert Russell Hare,
Appellant.

**Filed June 13, 2016
Affirmed
Ross, Judge**

Stearns County District Court
File No. 73-FA-11-3209

Kathryn Suzanne Neufeld, Fergusons Cove, Nova Scotia (pro se respondent)

Frederic W. Knaak, Holstad & Knaak, PLC, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

## UNPUBLISHED OPINION

**ROSS**, Judge

In this custody-modification appeal, Robert Hare challenges the district court's decision to grant his former wife, Kathryn Neufeld, sole legal and physical custody of their teenage daughter, P.H. The district court modified the extant custody arrangement because

it determined that P.H. was endangered emotionally because of her isolation in her father's home and because she strongly preferred to live with her mother in Canada. We observe that the circumstances did not compel the district court's decision, but, in this close case, we affirm because the district court's discretion is broad and the court did not abuse that discretion by finding that P.H. was emotionally endangered and that modification is in her best interests.

**FACTS**

Robert Hare and Kathryn Neufeld's marriage existed from 1988 to March 2012 when the district court granted Neufeld's dissolution petition. The parties have four children, and their youngest daughter, P.H., was 12 years old at the time. The district court ordered joint physical custody of P.H., but Neufeld received sole legal custody.

Neufeld wanted to move to Canada where she would remarry and be closer to relatives. She spoke with P.H about accompanying her. P.H. did not desire to relocate but preferred to remain in Minnesota near her friends. Neufeld deferred moving from the state for about a year, but she ultimately decided to move to Halifax, Nova Scotia. P.H., then 14 years old, still did not want to move. The parties agreed that Hare would have sole physical and legal custody.

P.H. maintained frequent contact with Neufeld by email, Skype, Facebook, and telephone. P.H. also visited her mother in Canada during school breaks, and she eventually began to reconsider her decision to stay in Minnesota. She told her mother so on a trip during a school break in February 2015. She soon told her father as well. P.H.'s older sister, Rebecca, was present when P.H. told her father, and Rebecca and Hare argued.

2

During the argument, Hare referred to Neufeld as "toxic," "manipulative," and "passive aggressive."

In April 2015, Neufeld moved the district court to grant her sole physical and legal custody of P.H. and authorize her move to Nova Scotia. The district court scheduled an evidentiary hearing to assess whether the current circumstances met the statutory requirement of "endangerment" to justify modifying the custody arrangement. It directed the parties to identify a counselor who would meet with P.H. about her custodial preference, but counseling never occurred because the parties could not agree on a counselor. Hare appealed to this court, challenging the district court's decision to hold the evidentiary hearing. We dismissed the appeal because the appeal challenged a nonappealable order. Hare petitioned unsuccessfully for supreme court review.

At the evidentiary hearing, the parties presented evidence bearing on P.H.'s home environment and her custodial preference. Rebecca Hare testified about the argument she had with Hare when P.H. told him she wanted to move. P.H., then 15 years old, explained her preference to the district court judge in an in-chambers discussion. During that discussion, P.H. gave the judge a written essay explaining why she wanted to live with her mother. The court later admitted the essay into evidence without objection.

The district court found that P.H.'s "environment [in her father's home] creates significant emotional and developmental endangerment." It based this finding on its view that Hare is too rigid in disagreements and on P.H.'s perception of isolation with her father, which she believes has stunted her ability to engage with adults. The district court granted Neufeld's motion to modify, giving her sole legal and physical custody. Hare asked the

3

court to stay the modification pending his appeal, and the district court denied the request. Hare challenged that denial by petitioning for a writ of prohibition, which this court denied. Hare now appeals the custody order.

## DECISION

This is a close case, but ultimately, we yield to the significant discretion that we afford the district court in custody cases. The district court has broad discretion to provide for the custody of the parties' children. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). Our review of a custody modification order is limited to considering whether the district court abused its discretion by misapplying the law or by making unsupported findings. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). The district court's findings of fact will be sustained unless they are clearly erroneous. *Id.* A fact-finding is clearly erroneous only when it leaves the court on appeal with a "definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). We defer to the district court's opportunity to evaluate witness credibility. *Id.*

Hare raises three primary issues on appeal. He first argues that the district court abused its discretion by finding that Neufeld presented a prima facie case of endangerment and granting an evidentiary hearing. He next argues that the district court clearly erred by finding that P.H. was endangered and failed to sufficiently consider her best interests. And he argues that the district court erred by accepting P.H.'s essay during the in-chambers interview. We address each issue in turn.

4

# I

Hare argues that the district court abused its discretion by granting an evidentiary hearing. The district court must conduct an evidentiary hearing when the party seeking to modify custody makes a prima facie case that the child is endangered. *Id.*; Minn. Stat. § 518.18(d) (2014). To establish an endangerment-based prima facie case, the movant must show four things: (1) a change of circumstances; (2) modification is necessary to serve the child's best interests; (3) the child's present environment endangers her physical or emotional health or her emotional development; and (4) the benefits of modification outweigh any detriments to the child. *Goldman*, 748 N.W.2d at 284. The moving party submits an affidavit setting forth modification-supporting facts, which the district court must accept as true. *Geibe v. Geibe*, 571 N.W.2d 774, 777 (Minn. App. 1997). The facts must not be conclusory. *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007). The nonmoving party may file opposing affidavits. *See id.* Whether the district court properly credited a moving party's affidavit is a question of law we review de novo. *Boland v. Murtha*, 800 N.W.2d 179, 185 (Minn. App. 2011). But we review for an abuse of discretion the district court's determination of whether a prima facie case for modification was made. *Id*.

Hare builds his assertion that the district court erred by granting an evidentiary hearing on four arguments. The arguments are not compelling.

He first argues that the language in Minnesota Statutes section 518.18(c) (2014), which states that the district court may modify a custody order if it has "reason to believe that the child's present environment may endanger the child's physical or emotional health

5

or impair the child's emotional development," requires the moving party to present *more* than a prima facie case of endangerment. Hare does not include relevant legal authority for this proposition. And caselaw refutes it, demonstrating that only a prima facie showing of endangerment is necessary. *See, e.g.*, *Goldman*, 748 N.W.2d at 284.

Hare next argues that Neufeld failed to offer specific evidence of endangerment in her affidavit. But Neufeld swore in her affidavit that P.H.'s preference regarding her custodial parent had changed. And a teenager's preference may be taken into account when determining emotional endangerment. *Geibe*, 571 N.W.2d at 778 ("Preferences may provide sufficient evidence for a district court, in its discretion, to order an evidentiary hearing."). Neufeld also swore that P.H. informed her that she lived in an "unstable and chaotic environment" with her father. And her motion included the affidavit of P.H.'s older sister Rebecca, recounting Hare's disparaging comments about Neufeld during Rebecca's argument with him after P.H. announced that she wished to live with her mother. These facts barely constitute specific evidence of endangerment sufficient to warrant a hearing.

Hare implies that Neufeld's claim of endangerment was unsupported because she never visited with P.H. in Minnesota. The statute does not on its face require a modification petitioner to have developed first-hand knowledge of the allegedly endangering circumstances in the other party's home, and, as a practical matter, we do not see how it could. A child may be endangered—and the noncustodial parent may learn of it and raise a concern about it—regardless of whether that parent learned of the problematic circumstances directly or indirectly.

6

Hare argues last that the district court "admit[ted] in its order that the balance of harms prong ha[d] not been met." The argument is not supported by the record. In the section of the district court's order entitled "Balance of The Harm," the court found that "[Neufeld's] supporting affidavits establish that modification of custody, and the relocation to a new school setting in Nova Scotia, may be more beneficial for [P.H.] than the status quo." Hare has not identified (and we have not found) any statement by the district court indicating that the balance-of-harms element of the prima facie case was not satisfied.

Because Hare has not established that the district court erred by granting the evidentiary hearing, we turn to his next issue on appeal.

**II**

Hare challenges the district court's findings that P.H. was emotionally endangered and that custody modification is in her best interests. Although Hare's argument points out the thin nature of the evidence, we cannot substitute our judgment for the district court's and must affirm based on our deferential standard of review.

***The Endangerment Determination***

Hare argues that the district court clearly erred by finding that P.H. was endangered. To meet the endangerment element, the moving party must show a significant risk to the child's physical or emotional health or emotional development. *Ross v. Ross*, 477 N.W.2d 753, 755 (Minn. App. 1991). The endangerment also must have had an "actual adverse effect on the child." *In re Weber*, 653 N.W.2d 804, 811 (Minn. App. 2002). A teenager's custodial preference is relevant to the endangerment determination, but preference alone is insufficient evidence of endangerment. *Id.*

The district court found that P.H.'s current environment posed a significant threat to her emotional health and development. Hare reasonably argues that there is little evidence supporting the finding. The record suggests that the district court's analysis may have overstated the actual harm to P.H. In determining that P.H. was emotionally endangered, the district court cited her isolation in her father's home and her fear of his confrontational behavior. But at least in part, the district court relied on the contention that existed between Neufeld and Hare at the time of their dissolution and on Neufeld's speculation that P.H. may have been experiencing the same inflexibility in her relationship with Hare that Neufeld allegedly experienced during the marriage. The isolation finding appears to be based on testimony that P.H. often had to spend time after school with a friend's family or at the library because of her father's work schedule. The court further found that P.H.'s current situation has stunted her ability to "talk to adults." It credited testimony from her sister and friend's mother that she has become more withdrawn since her mother moved to Canada and that she seemed less happy during the previous year. A teenager's emotional difficulty with the departure of one of her parents to another country, however, is not particularly surprising or apparently attributable to conditions in her current home. The court concluded that the statements Hare made about Neufeld during the argument with Rebecca would have been "emotionally harmful to any child," but aside from double hearsay, the record does not indicate that Hare regularly made those comments or that he knew that P.H., who had left the room, could hear them. Although all these considerations are relevant, the actual harm does not appear to have been exceptional.

Despite the dearth of particularly compelling evidence of actual harm, we respect the deferential standard of review and are not convinced that the district court clearly erred in this instance. We reach this conclusion because of P.H.'s very strong preference to live with her mother, which the district court found "sufficiently reasoned and independent." We have reviewed P.H.'s essay, which reveals an apparently increasing distance between daughter and father and an apparent longing for the relationship with her mother. We understand that P.H.'s discussion with the district court served to emphasize these things. Although the term "endangered" in other settings might suggest a more hazardous environment than P.H. experienced living with her father, we are bound by our caselaw, which shows that the emotional endangerment that results from placing a teenager with a particular parent against her wishes need not be especially severe to meet the statute. In *Ross v. Ross*, for example, we held that an older teenager's parental choice was an "overwhelming consideration" regarding custody. 477 N.W.2d at 756. The consideration is pragmatic and stems from concerns about the "dubious practicality" of compelling a teenager to live with a parent against her wishes and the consequent psychological damage of having her significant preference ignored. *Geibe*, 571 N.W.2d at 778. Our caselaw therefore informs us that a teenager's independent, strong, and reasoned preference affords the district court wide discretion for finding emotional endangerment.

Hare maintains that the district court clearly erred by finding that P.H.'s preference was not the product of undue influence. We see some support for Hare's argument in the record. For example, P.H.'s essay indicates that she wrote it "to [p]ersuade" the district court in its custody decision, and it reveals, "This is an essay my step-father . . . suggested

9

I should create." But the district court, which as fact-finder is in the best position to weigh the evidence and assess witness credibility, rejected the argument that P.H.'s preference had been manipulated, citing her testimony that she told her mother about it "out of the blue one day" and that it "definitely caught her by surprise." The finding is supported by the record and is not clearly erroneous.

Hare relatedly argues that P.H.'s stated preference is suspect because P.H. did not attend counseling before the hearing despite the district court's counseling directive. But the district court knew of and considered its directive and the parties' failure to find a counselor that both parents would agree to. Hare does not show that he was prejudiced by the lack of counseling, and so even if the failure to require counseling was error (and we have no basis to conclude that it was) our rules direct us to ignore errors that did not affect the outcome. Minn. R. Civ. P. 61.

The district court faced a difficult and close question. In making its endangerment finding, it had to attempt to predict the emotional harm P.H. would suffer if she were compelled to stay with her father against her very strong and reasoned preference against it. Even if we might have come to a different conclusion, it is not our prerogative to reweigh the evidence. *Grant v. Malkerson Sales, Inc.*, 259 Minn. 419, 425–26, 108 N.W.2d 347, 351 (1961). We review only for clear error and an abuse of discretion—not to see whether we would reach the same result had we been the fact-finder. *Id.* We therefore affirm the endangerment determination, albeit on a thin margin.

***The Best-Interests Determination***

Hare challenges the district court's application of the 12 best-interests factors in Minnesota Statutes section 518.17, subdivision 1 (Supp. 2015). In making its best-interests determination, the district court "must consider and evaluate all relevant factors" and "must make detailed findings on each of the factors . . . based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody." Minn. Stat. § 518.17, subd. 1(a), (b)(1). One factor may not be used to the exclusion of others. *Id.*, subd. 1(b)(1). The district court's ultimate best-interests determination is reviewed for abuse of discretion. *Vangsness v. Vangsness*, 607 N.W.2d 468, 475 (Minn. App. 2000). But in instances where it was unclear whether the district court considered all relevant factors, we have remanded for additional findings. *See, e.g.*, *Rogge v. Rogge*, 509 N.W.2d 163, 165 (Minn. App. 1993), *review denied* (Minn. Jan. 28, 1994).

Hare argues that the district court failed to make adequate findings on nearly every statutory factor and abused its discretion in its overall determination that modification was in P.H.'s best interests. We are not convinced by the argument. The district court's rationale reveals plainly that it was attempting to forge a result that most closely fit P.H.'s best interests. We have reviewed each of Hare's allegations and the record, and we conclude that the district court properly considered the relevant factors. Each allegedly erroneous best-interests finding is either supported by the record, is a credibility determination that we will not second-guess, or is not prejudicial. Hare directs us to no relevant evidence overlooked by the district court. The court's order and record demonstrate instead that the district court made sufficient findings on the relevant factors and carefully considered the

11

evidence. We therefore cannot say that the district court clearly erred in any of its fact-findings or abused its discretion in its ultimate determination that the custody modification is in P.H.'s best interests.

## III

Hare challenges the district court's acceptance of P.H.'s essay during the in-chambers interview because he was not given prior notice of the document and because it was allegedly influenced by Neufeld. But we do not consider the argument because it was not preserved for appeal by proper objection. Hare had the opportunity to object to the essay when it was offered into evidence after the district court judge's in-chambers discussion with P.H.  Hare, represented by counsel, chose not to object. The failure to object during the evidentiary hearing bars his present challenge. *See* Minn. R. Evid. 103(a)(1) (stating the general requirement of timely objection or motion to strike to preserve an evidentiary issue for review); *see also Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (concluding that issues not argued to and considered by the district court are waived). We cannot reverse on the basis of the argument.

We observe that even if the issue were preserved, we would not reverse. The record does not show that the district court relied on the essay. The judge wisely told P.H. that, although he would read her essay, he wanted to learn her reasons to live with her mother directly from her. The district court's order does not mention the essay. Hare has not shown any prejudice by the lack of notice.

**Affirmed.**