*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1684**

Serena Rae Sullivan, petitioner,
Respondent,

vs.

Robert John Sladek,
Appellant.

**Filed June 20, 2016
Affirmed
Connolly, Judge**

St. Louis County District Court
File No. 69HI-FA-09-163

Kimberly J. Corradi, Corradi Law Office, LLC, Hibbing, Minnesota (for respondent)

Bill L. Thompson, Law Office of Bill L. Thompson, Duluth, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges the denial of his motion to modify custody of the parties' children, arguing that the district court erred in considering allegations in respondent's affidavit and in failing to grant an evidentiary hearing and abused its discretion in

determining that appellant failed to make a prima facie case for modification of custody, not giving appellant the statutory 25% of parenting time, and awarding attorney fees to respondent sua sponte. Because we see no error and no abuse of discretion in the district court's decisions, we affirm.

## FACTS

Appellant Robert Sladek and respondent Serena Sullivan were married in 2004. Their son, P., is now 11 and their daughter, M., is 10. They separated in 2009, and their marriage was dissolved in 2010. The parties stipulated that respondent, who lives in Minnesota, would have physical custody of the children, and appellant, who lives in Illinois, would have parenting time of four weeks in the summer in 2010, increasing to six weeks in 2012, and alternate holidays.

In response to appellant's motions, the district court issued orders concerning parenting time in 2013 and 2014. In March 2015, appellant filed a motion for modification of physical custody to him and filed several other motions, as well as an affidavit that the district court "found to be unreasonable, intimidating, and threatening" and "credible and concerning." In May 2015, the district court denied appellant's motion to modify physical custody on the ground that appellant failed to meet his prima facie burden, denied several other motions, and concluded that appellant's difficulties with parenting time "have been to a significant degree the result of his own behavior that has been rude, insulting, belligerent, and bullying."

In August 2015, appellant filed another motion for modification of physical custody and related relief, with an affidavit asking the district court "to remove itself from this case"

2

and seeking compensatory parenting time, but not addressing the requisites of a motion to modify custody. Respondent moved for a finding that appellant was in civil contempt of court, for a modification of parenting time, and for related relief.

Following a hearing on the parties' motions, the district court issued an order denying an evidentiary hearing on appellant's motion for physical custody as well as the motion itself and providing a detailed parenting-time schedule whereby appellant has parenting time in Illinois of two three-week periods in the summer and in Hibbing, Minnesota, of one weekend per month and four 72-hour weekday visits per year, as well as alternate holidays and time for special occasions. Respondent was granted $1,000 in attorney fees.

Appellant challenges the order, arguing that the district court erred in considering allegations in respondent's affidavit and in failing to grant an evidentiary hearing and abused its discretion in determining that appellant failed to make a prima facie case for modification of custody, in giving appellant less than the statutory 25% of parenting time, and in awarding attorney fees to respondent sua sponte.

**D E C I S I O N**

**1.    Use of the Parties' Affidavits**

On appeal from a district court's denial, without an evidentiary hearing, of motions to modify custody and motions to restrict parenting time, this court first "review[s] de novo whether the district court properly treated the allegations in the moving party's affidavit as true, disregarded the contrary allegations in the nonmoving party's affidavits, and

3

considered only the explanatory allegations in the nonmoving party's affidavits." *Boland v. Murtha*, 800 N.W.2d 179, 185 (Minn. App. 2011).

Appellant argues that the district court "failed to consider [his] affidavits as true" and "gave all credibility to [r]espondent and ignored any assertions made by [him]"; he says this court "[i]n reviewing the affidavits de novo, . . . should clearly see that the District Court had a pre-disposition to go against [a]ppellant and the assertions he was making." Our review of the portions of the affidavits pertaining to appellant's allegations that respondent provided M. with inadequate medical care and denied appellant parenting time over the Memorial Day weekend does not support this argument.

As to M.'s medical care, appellant said in his affidavit that: (1) when he received the children for parenting time, M. was on crutches and her foot was wrapped, (2) he learned that her foot had been injured 11 days earlier; (3) he unwrapped the foot and found "a huge puncture wound" that was "severely infected," (4) he immediately took M. to a doctor; (5) "numerous appointments[] and follow-ups" were necessary, the last of which was scheduled for a date after appellant's parenting time had expired, and (6) he had asked respondent to delay the children's return so M. could attend the appointment.

Respondent in her affidavit said: (1) M. had an abrasion on her foot resulting from riding a go-cart, (2) respondent had taken M. to the emergency room in Hibbing, where she had been treated and seen for follow-up care two days before appellant's parenting time began; (3) respondent had told appellant that M.'s foot should be seen again by a doctor about a week later, when the children would be with him; (4) if the injury was infected, it became infected while M. was with appellant; (5) the doctor to whom appellant took M.

4

was appellant's father-in-law, (6) respondent told appellant she would obtain follow-up medical care for M.; (7) appellant had kept the children for an additional week so M. could attend the final appointment, and (8) when respondent asked law enforcement to check on the children because they had not been returned, the children were located at the doctor's vacation home.

In his responsive affidavit, appellant said: (1) M.'s injury occurred while she was with respondent, not while she was with him; (2) respondent had asked him to have his father-in-law, a doctor, look at M.'s foot; (3) respondent's "failure to properly treat the injury led to the infection"; (4) if he (appellant) had not noticed the infection, M. might have needed treatment such as skin grafting, wound cultures, and surgery; (5) respondent was blaming him for M. needing follow-up treatment; (6) respondent was now discrediting the doctor after asking appellant to have the doctor look at M.'s foot, and (7) appellant attempted to get an ex parte order from the district court changing the date of the children's return to respondent, but the district court would not sign the order.

The district court reviewed the three affidavits and found that appellant "knowingly and intentionally failed to return the children at the date and time ordered after his most recent period of summertime visitation, in direct violation of the court's order relative thereto" and explained that the reason it "did not consider or sign the proposed ex parte order extending [appellant's] summer parenting time was the total failure of [the] motion to comply with legal notice requirements."

The district court also found that:

considering [appellant's] claims to be completely true][ and in the light most favorable to his position [that respondent's] medical neglect [w]as a factual basis to support a prima facie finding leading to a trial for change of custody, this court must find that [respondent] in fact exercised reasonable care as the physical custodian relative to [M.'s] injured foot, and that any further care that would be necessary after the end of [appellant's] three-week visit could most certainly have been equally handled in Hibbing as in the Chicago area. Therefore, [appellant's] unilateral determination to violate this court's [parenting-time] order based on a purported medical emergency is totally unreasonable and provides no basis for a finding of a prima facie case.

The district court declined to adopt appellant's conclusion that respondent had been guilty of physically neglecting M., nor did it adopt respondent's version of the facts.

As to appellant's parenting time over Memorial Day weekend, he claimed that: (1) M.'s school had invited him to chaperone a field trip on Wednesday, May 20; (2) about a month ahead of time, he asked respondent for parenting time from that day through Monday, May 25 (Memorial Day); (3) respondent did not reply until 4:00 p.m. Friday, May 22; (4) by then the field trip was over and it was too late for appellant to make the ten-hour drive to Hibbing, and (5) he wanted compensatory time for the lost weekend and the lost field-trip opportunity.

Respondent claimed that: (1) she objected to the children being with appellant in a hotel on school nights (May 20-21 and 21-22) and offered parenting time of 5:00 p.m. Friday, May 22, to 5:00 p.m. Monday, May 25; (3) appellant was not satisfied with her offer and did not come to Minnesota for parenting time.

In his responsive affidavit, appellant claimed that: (1) respondent's e-mail confirming that he could have parenting time did not arrive until "into the weekend"

6

because it went to appellant's attorney, who had already left for the weekend; and (2) even had appellant received it on time, he would not have been able to get to Hibbing until after midnight on Friday.

The district court found that "it is beyond dispute from the record that [appellant] has in fact received what the current orders have provided for, and what the visitation expeditor has attempted to facilitate," and appellant does not dispute this finding in his affidavit. The record refutes appellant's argument that the district court impermissibly relied on respondent's affidavits rather than on appellant's affidavits.

## 2.    Prima Facie Case for Modification

The district court's conclusion that appellant had not made a prima facie case for modification of custody is reviewed for an abuse of discretion. *Boland*, 800 N.W.2d at 185.

Appellant moved for modification in July 2015, two months after his previous motion had been denied in May 2015. There is a two-year limitation on a subsequent motion for modification of custody after the disposition of a prior motion on its merits, but this limitation does not apply "if the court finds that there is persistent and willful denial or interference with parenting time, or has reason to believe that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.18(c) (2014). The district court admitted that, when appellant filed a second motion to modify custody within two months of the decision on his first motion, he alleged that "(1) [respondent] has substantially interfered with his parenting time; and (2) [respondent] has neglected their daughter's medical needs."

7

But evidence does not support either allegation: nothing in the parenting-time order then in force entitled appellant to have the children for the two school days preceding the Memorial Day weekend, and respondent procured and followed up with medical treatment for M.'s injured foot. On this record, the district court did not abuse its discretion in determining that appellant failed to make a prima facie case for modification of custody.

## 3.      Evidentiary Hearing

"We review de novo whether the district court properly determined the need for an evidentiary hearing." *Boland,* 800 N.W.2d at 185. "A district court is required under [Minn. Stat. §] 518.18 (d) to conduct an evidentiary hearing only if the party seeking to modify a custody order makes a prima facie case for modification." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). Because the district court did not abuse its discretion in concluding that appellant had not made a prima facie case for modification, it was not required to hold an evidentiary hearing.

## 4.      Statutory Parenting Time[1]

A district court has broad discretion in deciding parenting-time issues and will not be reversed absent an abuse of this discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). There is a rebuttable presumption that a parent is entitled to at least 25% of

---

[1] We address this issue in the interests of completeness, but we note that it is not properly before us because appellant did not raise or argue it to the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (this court generally addresses only matters presented to and considered by the district court); *Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010) ("[A] district court [should] demonstrate an awareness and application of the 25% presumption *when the issue is appropriately raised* and the court awards less than 25% parenting time.") (emphasis added).

parenting time, or 92 overnights per year, under Minn. Stat. § 518.175, subd. 1 (g) (2014) (providing that "the percentage of parenting time may be determined by calculating the number of overnights that a child spends with a parent"). "[T]he statute gives district courts flexibility in weighing the evidence and the presumption." *Hagen v. Schirmers*, 783 N.W.2d 212, 219 (Minn. App. 2010).

We note that appellant's parenting time is very close to the presumed 25%, or 92 nights per year. His Illinois parenting time is: three weeks beginning on the second Monday in June and three weeks beginning on the first Monday in August (42 nights); Memorial Day weekend in odd years, and July 4 and Labor Day weekends in even years (an average of 4.5 nights); Christmas vacation from the day after school lets out until December 31 in odd years, and Easter and Thanksgiving vacations in even years (average of 9.5 nights). His Minnesota parenting time is: one weekend per month (24 nights); and four 72-hour weekday visits per year (12 nights). Because the sum of these is 92 (42 + 4.5 + 9.5 + 24 + 12 = 92), appellant has roughly 92 nights, or the statutory 25% of parenting time, annually. In addition, appellant has alternate school holidays and special-occasion time (divided with respondent) in Minnesota, as well as special-occasion time for weddings, funerals, etc. outside Minnesota. Therefore, appellant's argument on appeal that he is entitled to more than six weeks of summer vacation and the second part of Christmas vacation, after December 31, to bring his parenting time closer to, the presumptive 25% lacks a basis in fact.[2]

---

[2] Appellant's argument that the district court's reference to his "unreasonably demanding, intimidating, and threatening behavior towards [respondent]" means that the district court

Moreover, "parenting time allocations that merely fall below the 25% presumption can be justified by reasons related to the child's best interests and considerations of what is feasible given the circumstances of the parties." *Id.* at 218. If appellant had been awarded significantly less than 25% of parenting time, we agree with the district court that "the simple practical difficulty of [appellant] living in the Chicago area, so far away from the children" could make such an award "feasible given the circumstances of the parties." *See id.* The district court's award of parenting time was not an abuse of discretion.

5. **Attorney Fees**

In the marriage-dissolution context, a district court has discretion to award "fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1 (2014). The district court found that "[appellant's] present motion to change custody is baseless, frivolous, unnecessary, and has cost [respondent] attorney's fees beyond what would have been necessary to simply modify the existing parenting time" and ordered that "[appellant] shall pay [respondent] $1,000 as a contribution to [her] attorney fees unnecessarily incurred herein."

This award was made sua sponte: respondent did not seek attorney fees. Thus, appellant's argument that respondent did not comply with Minn. R. Gen. Pract. 119.02 (providing that a motion for an award of attorney fees be accompanied by an affidavit describing the work performed, the name of the lawyer or legal assistant who performed

---

"penalized" him by reducing his parenting time similarly lacks a basis in fact. The district court actually awarded him more parenting time than he asked for and at least the statutory 25%.

10

it, the hourly rate sought, and that person's normal hourly rate) fails: that rule pertains only to situations "in which an attorney seeks the award, or approval, of attorney fees . . . ." See Minn. R. Gen. Pract. 119.01. Appellant does not challenge the basis for the district court's fee award, saying "[i]t is abundantly clear that the district court in this matter was upset with [appellant] for bringing his motion." The district court's award of $1,000 in attorney fees incurred in responding to a second motion to modify custody filed two months after a previous motion had been denied was not an abuse of discretion.

**Affirmed.**